J-A10008-24

2024 PA Super 141

| | | |
|---|---|---|
| IN RE: C.A.J., AN ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.A.J. | : : : : : : | |
| | : | No. 942 EDA 2023 |

Appeal from the Decree Entered March 8, 2023
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 0606-2021

BEFORE:     PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

OPINION BY PANELLA, P.J.E.:                                      **FILED JULY 9, 2024**

W.A.J., C.A.J.'s daughter, appeals from the Delaware County Orphans' Court's decree finding C.A.J. incapacitated, appointing Andrew Donaghy, Esq. as plenary guardian of C.A.J.'s estate and appointing C.A.J.'s daughter and W.A.J.'s sister, A.R, and C.A.J.'s sister, S.M., as plenary guardians of C.A.J.'s person. W.A.J. complains the orphans' court abused its discretion by: refusing to recuse itself; appointing A.R. and S.M. as plenary guardians of C.A.J.'s person; finding C.A.J. incapacitated without issuing timely findings of fact; and dismissing her petition for revocation of documents executed and transfers made. Because we find that these issues are without merit, we affirm.

On December 28, 2021, W.A.J. filed a petition with two counts. Count one was a "Petition for the Adjudication of Incapacity and Appointment of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Plenary Guardian of the Estate and Person" for her mother, C.A.J. In that petition, she asked the court to appoint a neutral, non-family member as plenary guardian of C.A.J.'s person. Count two was a "Petition for Revocation of Documents Executed and Transfers Effected under Inference of Incapacity" ("Petition for Revocation"). In the Petition for Revocation, W.A.J. alleged she had been cut off from any contact with her mother. W.A.J. also alleged C.A.J. had made changes to her deed for her real property in Florida, financial accounts, and estate planning documents while under the care and undue influence of A.R.

At the time of these filings, C.A.J. was a 77-year-old widow living with A.R. and A.R.'s family. C.A.J. began living with A.R. and her family in May 2020, "due in large part to [C.A.J.'s] memory decline and emotional distress." Orphans' Court Opinion, 7/7/2023, at 2.

The orphans' court appointed a guardian *ad litem* ("GAL") for C.A.J. It also granted W.A.J.'s petition for an independent medical evaluation of C.A.J. Dr. Marc Gramatges performed the court-ordered examination, interviewing C.A.J. and reviewing previous medical records. The orphans' court summarized the conclusions and recommendations Dr. Gramatges made in his capacity evaluation report:

> [C.A.J.] met the criteria for probable major neurocognitive disorder due to Alzheimer's disease and probable major neurocognitive disorder due to vascular disease without behavioral disturbance. [C.A.J.] was not able to manage her financial resources or meet essential requirements for her physical

health and safety. [Dr. Gramatges] recommended that a plenary guardian be appointed for [C.A.J.] for the remainder of her life.

*Id.* at 3 (citations to capacity evaluation report omitted).

The orphans' court held a hearing on the matter on August 24, 2022. One day prior to the hearing, W.A.J. filed a motion for the orphans' court's recusal.[1] The court initially addressed the recusal motion at the hearing. W.A.J. argued the court should recuse itself because it had previously presided over her protracted divorce action, which involved allegations that "did not put her in the best light." N.T., 8/24/2022, at 6. The court denied the motion, reasoning that it did not have to recuse itself simply because it had presided over another matter that was not related to the current action and was, in any event, of public record for any jurist to see. *See id.* at 12-13.

The court then proceeded to address the guardianship matter. All parties essentially agreed that Dr. Gramatges's capacity evaluation report, which had been introduced into evidence, was sufficient to establish that C.A.J. was incapacitated. *See id.* at 36-37. All parties also agreed to the appointment of Attorney Donaghy as guardian of C.A.J.'s estate. *See id.* at 32. W.A.J., however, objected to A.R. and S.M. being appointed as plenary guardians of C.A.J.'s person, instead asking that a neutral, non-family member be appointed for that role. *See id.* at 37-49.

_____

[1] By this point, the guardianship matter had been assigned to President Judge Linda Cartisano after Judge Kathyrnann Durham had recused herself in the matter.

- 3 -

The GAL represented that she had recommended the appointment of A.R. and S.M. as guardians of C.A.J.'s person. *See id.* at 54. She relayed that C.A.J. had told her that she did not want to see or speak with W.A.J. because of W.A.J.'s behavior. *See id.* at 54-55.

C.A.J. also testified at the hearing. She stated she wanted to continue to live with A.R. and have A.R. take care of her. *See id.* at 59-60. She shared that she did not want to have contact with W.A.J. at that point in time because of W.A.J.'s erratic behavior and threats but that it was difficult because W.A.J. was still her daughter. *See id.* at 61.

At the conclusion of the hearing, the court appointed A.R. and S.M. as temporary guardians of C.A.J.'s person to handle her day-to-day and medical needs. *See id.* at 67.

The court entered a decree on August 30, 2022, finding that C.A.J. was incapacitated in that she was "totally unable to manage her financial affairs and meet those requirements essential for both her general safety as well as her physical health." Decree, 8/30/2022. The decree also appointed A.R. and S.M. as temporary plenary guardians of C.A.J.'s person and Attorney Donaghy as plenary guardian of C.A.J.'s estate. *See id*. Additionally, the court entered an order denying W.A.J.'s recusal motion.

The court scheduled hearings on count two of W.A.J.'s petition, her Petition for Revocation, for October 26, October 27, and October 28, 2022.

According to the orphans' court, "numerous subpoenas were issued in anticipation of trial." *Id.* at 5.

W.A.J. failed to appear for the hearing on October 26. Her counsel "offered the court an email from [W.A.J.] dated Tuesday October 25 7:46 p.m. wherein [W.A.J.] explained she was scared, her depression had worsened, [she was] a mess mentally and attending the hearings would damage [her] mental state further." *Id.* (quotations and citation omitted). W.A.J. also provided a letter from her treating psychologist, which stated:

> It is in my opinion that [W.A.J.] is unable to attend upcoming hearings for the time being—yet to be determined—due to a significant exacerbation of depressive symptoms following recent events regarding her current court case and the grief secondary to the loss of her relationship with her mother.

Letter from John Glanville, Psy.D., 10/25/2022 (single page). The orphans' court continued:

> Although counsel for [W.A.J.] asserted that her client would be unavailable to appear for "the next two weeks," (N.T., 10/26/2022, at 29), [the doctor's] note indicates that the time period when [W.A.J.] would be ready to proceed was "yet to be determined." Counsel asserted she would supplement the record but this was never done. "Well, the note says for a date to be determined. So I will get you a supplemental when I speak to the doctor. And I will supplement that part of the record." [(*Id.* at 30)]. The court was never notified as to when [W.A.J.] could appear.

Orphans' Court Opinion, 7/7/2023, at 5-6.

Counsel for C.A.J. vehemently opposed the giving of any continuance on the Petition for Revocation at the 11th hour, explaining that counsel for C.A.J. had lined up witnesses over the three days reserved for trial and

- 5 -

"there's costs to these witnesses, expert witnesses, doctors, psychologists, police officers who are requesting fees." N.T., 10/26/2022, at 7. Counsel noted C.A.J.'s family had also taken the time to come to court. Counsel requested that, given the circumstances, the court dismiss W.A.J.'s Petition for Revocation. *See id*.

The court granted counsel's request and dismissed count two of W.A.J.'s petition on the basis that W.A.J. did not appear for the hearing and the court was not given a definitive date when W.A.J. might be able to appear. *See id.* at 21; *see also* Order, 10/26/2022 (dismissing Petition for Revocation for failure to appear). The court acknowledged that the issue of whether the temporary plenary guardians of C.A.J.'s person, A.R. and S.M., would become the permanent plenary guardians of C.A.J.'s person remained outstanding. The court eventually scheduled hearings regarding guardianship of C.A.J.'s person for March 1 and March 2, 2023.

A.R. testified at the hearing on March 1, 2023. She relayed that her mother had been living with her since 2020. She testified about C.A.J.'s routine at her house, that C.A.J. ate dinner and had a close relationship with her, A.R.'s two adult children and A.R.'s husband, and that A.R. gave C.A.J. her medicine daily and drove her to her appointments. *See* N.T., 3/1/2023, at 25-29. A.R. agreed C.A.J. had never expressed the desire to reside someplace else. *See id.* at 25-29, 44. A.R. stated she is totally devoted to her mother. *See id.* at 47.

A.R. also testified about the rocky relationship she and C.A.J. had with W.A.J., and that C.A.J. did not want W.A.J. to visit her. A.R. reported she and C.A.J. called the police after W.A.J. left threatening voicemails on C.A.J.'s phone throughout the night on May 25, 2021. *See id.* at 146. Those voicemails were played for the court. *See id.* at 149-157. A.R. testified she and her mother sought a Protection from Abuse order against W.A.J. *See id.* at 157.

S.M. testified as well. She testified she has a close relationship with C.A.J., helping A.R. with C.A.J. and visiting C.A.J. often. She maintained that C.A.J.'s living arrangement with A.R. and her family was "perfect." *Id.* at 228. They take care of whatever C.A.J. needs and C.A.J. is "very much a part of [A.R.'s] family." *Id.* at 228.

S.M. also reported C.A.J. does not want to see W.A.J. and testified that W.A.J. was blocked from C.A.J.'s phone because W.A.J. harassed C.A.J. and A.R. *See id.* at 235, 240, 250. According to S.M., "[W.A.J.] causes [C.A.J.] too much anxiety and stress," which has led to the deterioration of C.A.J.'s medical condition. *Id.* at 252.

W.A.J. also testified. W.A.J. was not asking to be made guardian of C.A.J.'s person. *See* N.T., 3/2/2023, at 10, 60. Rather, she did not want A.R. and S.M. to have that role. W.A.J. admitted she left the voicemails on C.A.J.'s phone that had been played for the court but claimed she did so because she

was upset that A.R. was preventing her from seeing or talking to C.A.J. ***See id.*** at 16, 43.

W.A.J. agreed C.A.J. was not malnourished or physically abused by A.R., but she did raise the issue that C.A.J. had itchy eyes while she had COVID and it was W.A.J. who called the eye doctor. ***See id.*** at 68-69. W.A.J. also attempted to plead the Fifth Amendment when asked if she contacted the District Attorney's office in Florida, where C.A.J. owned a house, about certain documents C.A.J. had executed. ***See id.*** at 78.

Following the hearing, on March 8, 2023, the orphans' court entered a decree declaring C.A.J. an incapacitated person and appointing A.R. and S.M. as the plenary guardians of C.A.J.'s person. W.A.J. filed a timely notice of appeal and complied with the court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

After the notice of appeal was filed, Attorney Donaghy filed a petition to sell real estate and to invade principal for the care, maintenance, and costs for C.A.J. with the orphans' court. The orphans' court denied the petition on the grounds that it no longer had jurisdiction over the matter.

A.R. and S.M. then filed a petition for extraordinary relief—emergency application with this Court. In the petition, A.R. and S.M. represented that C.A.J.'s physical and mental condition had worsened to the extent that she now requires all-day in-patient care. According to the petition, C.A.J. had been moved to Rose Tree Place, a memory care facility. To cover the costs of

C.A.J.'s expenses at Rose Tree Place, A.R. and S.M., together with Attorney Donaghy as the plenary guardian of the estate, requested that this Court remand the matter to the orphans' court to determine the limited issue of whether C.A.J.'s assets could be liquidated for medical and related expenses.

This Court granted the petition, and remanded the matter to the orphans' court so that the guardians could file an application to liquidate assets necessary for C.A.J.'s uninterrupted care. This Court further directed the orphans' court to conduct proceedings to determine the limited issue of the necessity for the plenary guardian of the estate to liquidate C.A.J.'s assets. The order concluded: "All other aspects of this matter including the pending appeal before this Court shall remain the exclusive jurisdiction of" the Superior Court. Per Curiam Order, 4/16/2024, at 2.

The certified record was returned to the orphans' court. Attorney Donaghy refiled his petition to sell real estate, and the orphans' court held a hearing on the petition. On May 23, 2024, the orphans' court entered an order granting the petition and authorizing Attorney Donaghy to enter into a long-term contract for residential services for C.A.J., invade the principal and sell real estate to pay for the long-term residential care of C.A.J. The certified record was subsequently returned to this Court, allowing us to proceed with the appeal before us. W.A.J. raises four issues for our consideration:

> I.  Did the [orphans'] court err in denying [W.A.J.'s] motion to recuse [the orphans' court] from the matter[?]

- 9 -

II.     Did the [orphans'] court err in appointing an interested party or parties who clearly had conflicts of interest, as guardian(s) or should a neutral party have been appointed[?]

III.    Did the [orphans'] court err in entering the final order for guardian of the person without the appropriate support of findings of fact and/or conclusions of law[?]

IV.     Did the [orphans'] court err in dismissing [W.A.J.'s] petition for revocation of documents executed and transfers made as a result of undue influence and incapacity[?]

Appellant's Brief at 12 (suggested responses and unnecessary capitalization omitted; issues reordered).

Although W.A.J. raises these four distinct questions in her statement of questions involved section, she does not divide her argument "into as many parts as there are questions to be argued" nor does she "have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein." Pa.R.A.P. 2119(a). As such, W.A.J.'s brief clearly does not comply with our Rules of Appellate Procedure. While we could arguably find W.A.J.'s arguments waived for this noticeable deficiency in her brief, because we are still able to parse out W.A.J.'s arguments and review them, we decline to find them waived on the basis of this deficiency.

In her first issue, W.A.J. maintains the orphans' court erred by denying her motion for its recusal. This claim is without merit.

Generally, a motion for recusal is properly directed to and decided by, in the first instance, the jurist whose participation is being challenged. **See Commonwealth v. Watson**, 228 A.3d 928, 939 (Pa. Super. 2020). "Where

a jurist rules that he … can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion." *Id.* (citation omitted) (ellipsis in original).

When a party requests recusal, it is their burden to produce evidence establishing bias or prejudice, which raises a substantial doubt as to the ability of the jurist to preside impartially. *See id.* However:

> The inquiry is not whether a judge was in fact biased against the party moving for recusal, but whether even if actual bias or prejudice is lacking, the conduct or statement of the court raises an appearance of impropriety. The rule is simply that disqualification of a judge is mandated whenever a significant minority of the lay community could reasonably question the court's impartiality.

*Id.* (citation omitted).

In considering W.A.J.'s motion for recusal, the orphans' court acknowledged that it had previously presided over the divorce action in which W.A.J. was a party. The court also noted that W.A.J. maintained that because the court had heard "information and characterizations that did not cast [W.A.J.] in a true or becoming light" during the divorce action, it could not be impartial in the current guardianship action. Orphans' Court Opinion, 7/7/2023, at 19. The court responded:

> [W.A.J.] presented no evidence as to what "information and characterizations" of [W.A.J.] the court was alleged to have heard and allegedly disclosed to the court during the [divorce] hearings. [W.A.J.] offered no evidence as to why this divorce case was different from any other family law case. There was no specific evidence presented as to what the court heard and why it would affect this case.

- 11 -

*Id.* at 20.

As such, the court found W.A.J. had failed to produce any evidence demonstrating any bias or prejudice and accordingly, the court had not abused its discretion by denying W.A.J.'s motion for recusal. We agree.

In her appellate brief, W.A.J. continues to make the summary allegation that the orphans' court heard "information and characterizations which did not cast [W.A.J.] in a true or becom[ing] light, matters which would be relevant in these proceedings." Appellant's Brief, at 16. However, she in no way attempts to respond to the orphans' court by further clarifying exactly what "information and characterizations" to which she is referring or how they are relevant to this case. As such, we see no abuse of discretion in the court's determination that it was not able to be impartial in the instant matter simply because it presided over an unrelated matter involving the same party*. See In re S.H.,* 879 A.2d 802, 807-08 (Pa. Super. 2005) (finding that the orphans' court did not abuse its discretion in denying a party's recusal motion in a parental termination case on the basis that the court had also presided over dependency hearings involving the party and had previously sentenced the party in a criminal matter).

In her second issue, W.A.J. contends the orphans' court abused its discretion by appointing A.R. and S.M. as plenary guardians of C.A.J.'s person because their interests allegedly conflict with C.A.J.'s interests. This claim also fails.

Under the Decedents, Estates and Fiduciaries Code ("Code"), an individual may be adjudicated incapacitated and a guardian of the person and estate may be appointed if the petitioner seeking this adjudication and appointment shows by clear and convincing evidence that the individual is "unable to manage [her] financial resources [and] meet essential requirements for [her] physical health and safety." 20 Pa.C.S.A. § 5501; *see* 20 Pa.C.S.A. § 5511(a).

Section 5512.1(a) of the Code requires the court, when making a determination of incapacity, to consider and make specific findings of fact regarding certain specified areas. Those areas include: (1) the "nature of any condition or disability which impairs the individual's capacity to make and communicate decisions[;]" (2) the "extent of the individual's capacity to make and communicate decisions[;]" (3) the "need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions" and "the existence, if any, of less restrictive alternatives" such as, *inter alia*, "[a]dvance directives[;]" (4) the "type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions[;]" and (5) the "duration of the guardianship." 20 Pa.C.S.A. § 5512.1(a)(1)-(5).

Once a court determines an individual is incapacitated and in need of a guardian, it becomes the court's responsibility to appoint a person or entity to

serve as guardian. ***See Estate of Haertsch***, 649 A.2d 719, 720 (Pa. Super. 1994). There are two classes of guardian: (1) guardian of the person, who assumes primary physical responsibility for the care and custody of the incapacitated individual and (2) guardian of the estate, who is entrusted with the control of the property of the incapacitated individual. ***See Rock v. Pyle***, 720 A.2d 137, 141 (Pa. 1998). "The spheres of authority of a guardian of the person and of a guardian of the estate are distinct and mutually exclusive." ***Id.*** (citations omitted).

When deciding who shall serve as guardian of the person, the court may consider the preference of the incapacitated person. ***See Estate of Haertsch***, 649 A.2d at 720. The selection of a guardian is within the sound discretion of the orphans' court, and this Court will not disturb that selection absent an abuse of discretion. ***See id.*** The orphans' court may not, however, appoint a person whose interests conflict with those of the incapacitated person unless no other alternative exists. ***See*** 20 Pa.C.S.A. § 5511(f). "Any family relationship to such individual, shall not, by itself, be considered an interest adverse to the alleged incapacitated person." ***Id.***

Here, in appointing A.R. and S.M. as C.A.J.'s guardians of her person, the orphans' court found that A.R. and S.M. would be the best individuals to "assert the rights and best interests" of C.A.J. ***See*** 20 Pa.C.S.A. § 5521(a). In support, the court pointed to the testimony of C.A.J. that she wanted to remain in A.R.'s home and her comfort and confidence while in A.R.'s care,

A.R.'s testimony of how she and her family cared for her mother on a daily basis, and S.M.'s testimony that C.A.J. was well cared for by her and A.R. **See** Orphans' Court Opinion, 7/7/2023, at 16.

W.A.J. does not dispute any of this. Instead, she continues to insist the court abused its discretion by appointing A.R. and S.M. as guardians of C.A.J.'s person because they have, according to W.A.J., exploited her financially as shown by the changes made to C.A.J's finances while C.A.J. was in A.R.'s care. However, as the orphans' court explained, A.R. and S.M., as guardians of the person, "have no control over [C.A.J.'s] assets." **Id.** Although W.A.J. continues to be concerned with the handling of C.A.J.'s property and finances and bases her objection to the appointment of A.R. and S.M. solely on that basis, the orphans' court appointed a neutral guardian of C.A.J.'s estate, Attorney Donaghy, whose appointment was not disputed by W.A.J. It is Attorney Donaghy, as the guardian of C.A.J.'s estate, who has the authority to control C.A.J.'s property and finances. As such, we fail to see how the appointment of A.R. and S.M. as guardians of C.A.J.'s person conflicts with C.A.J.'s interests in the manner alleged by W.A.J.

W.A.J. also takes issue with the court taking into consideration C.A.J.'s preference to stay in the care of A.R. when selecting who the guardians for C.A.J.'s person should be. However, the Code specifically contemplates that a court may consider the preference of the incapacitated person when appropriate. **See** 20 Pa.C.S.A. § 5511(f)(1); **see also Estate of Haertsch**,

649 A.2d at 720. As such, the fact that the orphans' court considered C.A.J.'s preference to continue to have A.R. care for her does not, contrary to W.A.J.'s assertion, represent an abuse of discretion.

Based on the above, we see no abuse of discretion in the court's determination to appoint A.R. and S.M. as guardians of C.A.J.'s person. It is clear from the record and the court's opinion that it weighed all the evidence presented, including the findings of Dr. Gramatges and the testimony of the GAL, C.A.J., A.R., S.M. and W.A.J., when selecting who should be appointed to care for C.A.J. Given the evidence presented to the orphans' court and the discretion afforded to the court to select the guardian of a person, no relief on this claim is due.

Next, W.A.J. contends the orphans' court erred by entering a decree declaring C.A.J. incapacitated and appointing guardians for her person without any accompanying findings of fact. She contends the court only issued its written Findings of Fact and Conclusions of Law after the notice of appeal was filed and she argues this was untimely. This claim also does not warrant any relief.

The court found W.A.J.'s contention that it failed to make any findings of fact was simply "inaccurate." Orphans' Court Opinion, 7/7/2023, at 23. The court noted that its Orders entered on August 29, 2022 and March 8, 2023 made the findings of fact required by Section 5512.1(a), which the court noted is a procedure this Court has found to be sufficient. **See id.** at 23, n.5 (*citing*

***In Re: Guardianship of H.T.***, 747 MDA 2021 (Pa. Super. filed August 25, 2022) (unpublished memorandum)).

The court further noted that, in any event, it issued additional findings of fact on April 25, 2023. ***See*** Findings of Fact and Conclusions of Law, 4/25/2023. In those findings, the court recounted that the court-appointed evaluator found C.A.J. had Alzheimer's, was not able to manage her financial resources or meet essential requirements for her care and therefore recommended the appointment of a plenary guardian for the remainder of her life. It noted C.A.J.'s preference to remain in A.R.'s care. The court also specifically referenced A.R.'s testimony regarding how she cared for her mother and that there was "*no* testimony about any problems with [C.A.J.] residing with [A.R.]." ***Id.*** at 5 (emphasis in original).

W.A.J. does not challenge the sufficiency of these written findings of fact but argues they were untimely filed because the court did not issue them until after the notice of appeal had been filed. The only authority W.A.J. offers for this timeliness claim is Section 5512.1, cited above, which requires courts to consider and make specific findings of fact in certain specified areas when determining whether a person is incapacitated and if so, what type of guardianship is needed. We note that W.A.J. does not dispute any of the court's findings pursuant to Section 5512.1 regarding C.A.J.'s incapacitation and her need for plenary guardianship. Even so, as counsel for C.A.J. points

out, Section 5512 does not set "forth the deadline for when [the] findings [of fact] shall be filed." Appellee's Brief at 11.

Moreover, as the orphans' court found, W.A.J. has not established she was prejudiced by the filing of the Findings of Fact and Conclusions of Law on April 25, 2023, as the court granted W.A.J.'s petition for additional time to file her amended Rule 1925(b) statement and she had "ample time" to review the Court's Findings of Fact and Conclusions of Law before filing her amended 1925(b) statement on May 30, 2023. Orphans' Court Opinion, 7/7/2023, at 24. Based on all the above, this claim does not afford W.A.J. any relief.

In her last claim, W.A.J. argues the court improperly dismissed count two of her petition, her Petition for Revocation based on claims of undue influence, because of her failure to appear for the hearing on that petition. Again, this claim does not warrant any relief.

In rejecting W.A.J.'s claim, the orphans' court noted that W.A.J. not only failed to appear for the first day of her scheduled three-day hearings on her Petition for Revocation, but the doctor's note given to explain W.A.J.'s failure to appear did not provide or even estimate a date upon which W.A.J. could return. The court explained that when a case is called for trial, and the petitioner/plaintiff is not ready without satisfactory excuse, the orphans' court may enter a nonsuit upon the motion of the respondent/defendant. **See**

Pa.R.C.P. 218(a).[2] "A party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse." **See** Pa.R.C.P. 218(c); **see also** Pa.R.C.P. 218, *note* ("the mere failure to appear for trial is a ground for the entry of a nonsuit").[3]

The orphans' court further explained that a "nonsuit may be entered against a party where the disposition of the case depends on an issue on which that party has the burden of proof and has failed to satisfy that burden." 20 Pa.C.S.A. § 779(c). Applying these principles to the case at hand, the orphans' court noted that because W.A.J. failed to appear for trial, the court could not reach the allegations of undue influence and therefore W.A.J. had failed to meet her burden of proof regarding the Petition for Revocation that she had filed. Accordingly, the orphans' court reasoned it had properly dismissed the Petition for Revocation and emphasized that it had done so without prejudice.

Before we address W.A.J.'s claim that the orphans' court erred in reaching this conclusion, we must address counsel for C.A.J.'s claim that this Court does not have jurisdiction over this final claim. **See Murphy v.**

---

[2] "The orphans' court division may enter a nonsuit in the same manner as in an action at law. 20 Pa.C.S.A. § 779(a)." **In re Estate of Schmidt**, 596 A.2d 1124, 1131 (Pa. Super. 1991). Here, the court's granting of counsel's motion for the dismissal of the Petition for Revocation was, in effect, an entry of nonsuit for W.A.J.'s failure to appear.

[3] While we recognize that explanatory notes are nonbinding, this Court has found the explanatory notes and comments "accompanying rules of civil procedure to be both persuasive and instructive." **Hoopes v. Hadley**, — A.3d—, 2024 WL 189116, at * 5 n.4 (Pa. Super. filed May 1, 2024).

***International Druidic Society***, 152 A.3d 286, 289 (Pa. Super. 2016) (stating that this Court may raise the issue of jurisdiction at any time). Counsel claims that we lack jurisdiction because W.A.J. failed to file a post-trial motion to remove the nonsuit entered by the orphans' court pursuant to Pa.R.C.P. 227.1(a)(3) and this Court has held that the appeal from the entry of a nonsuit lies only from the lower court's denial of the post-trial motion to remove the nonsuit. ***See id.*** at 290. However, Pennsylvania Orphans' Court Rule 8.1 provides that no "post-trial motions may be filed to any order or decree of the [orphans'] court." Pa.O.C.R. 8.1. The explanatory comment clarifies that the "post-trial motion practice applicable in the Civil Division of the Court of Common Pleas is not applicable in the Orphans' Court Division." Pa.O.C.R. 8.1, cmt.

As such, we do not find any jurisdictional impediment to reaching the merits of W.A.J.'s claim that the orphans' court abused its discretion by entering the nonsuit. However, in doing so, we find no abuse of discretion in the orphans' court decision to dismiss W.A.J.'s Petition for Revocation. W.A.J. failed to appear for the hearing on the petition she filed, and Rule 218 provides the orphans' court with the option to enter a nonsuit upon the respondent's request in such circumstances. While W.A.J. argues there would have been no prejudice to the parties had the orphans' court "taken up the matter at a hearing day scheduled later in the action," Appellant's Brief at 30, C.A.J.'s counsel's arguments advocating for dismissal of the petition at the hearing at

which W.A.J. failed to appear reflects the opposite. In any event, the orphans' court stressed that, even though its order did not explicitly state as much, the Petition for Revocation was dismissed without prejudice and W.A.J. did not subsequently challenge the dismissal or follow up by providing the court with a date she would definitively be able to return to court. W.A.J. does not dispute any of this. Given all of these circumstances, we see no merit to W.A.J.'s claim that the court erred by dismissing her Petition for Revocation for her failure to appear.

Decree affirmed.

Judge Beck joins the Opinion.

Judge Colins did not participate in the consideration or decision of this case.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/9/2024