J-S20002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.W., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W. | : | |
| | : | |
| | : | No. 1721 MDA 2024 |

Appeal from the Order Entered October 29, 2024
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  2023-318

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:  **FILED: JULY 18, 2025**

Appellant, M.W., appeals from the October 29, 2024 order entered in the Orphans' Court Division of the Court of Common Pleas of Huntingdon County that upheld its prior decree, which adjudicated Appellant "a totally incapacitated person," and continued its appointment of Huntingdon-Bedford-Fulton Area Agency on Aging ("the Agency") as Appellant's permanent plenary guardian.[1]  After careful review, we affirm.

---

[1] "An appeal may be taken as of right from [an orphans' court] order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship[.]"  Pa.R.A.P. 342(a)(5).

Initially, Appellant appealed separate orders entered by the orphans' court on October 29, 2024.  Notice of Appeal, 11/27/24.  The first order upheld the orphans' court's prior decree that adjudicated Appellant a totally incapacitated person and continued its appointment of the Agency as Appellant's permanent plenary guardian.  Orphans' Court Order, 10/29/2024 (incapacity).  The second order, as discussed *infra*, granted the Agency permission to sell

The record reveals that, on December 6, 2023, the Agency filed a petition to adjudicate Appellant an incapacitated person and appoint an emergency or permanent guardian for Appellant's person and her estate.[2]  The Agency's request was based on allegations that Appellant, who was 82 years of age at the time the petition was filed, "suffer[ed] from physical and mental conditions[,] as well as other conditions[,] such that she [was] no longer capable of caring for herself" and was "in need of immediate assistance on a daily basis to provide for her daily needs and to insure her safety."  Petition to Adjudicate Incapacity and Appoint Guardian, 12/6/23, at ¶4.  That same day, the orphans' court granted the petition, finding that the "alleged incapacitated person, as a result of her impaired cognitive capacity and

_____

Appellant's real property.  Orphans' Court Order, 10/29/24 (real property).  In her appellate brief, Appellant "elected not to pursue the appeal of the second October 29, 2024 order[ (the order pertaining to the sale of her real property).]"  Appellant's Brief at 2 n.1.  Therefore, we shall address Appellant's appeal as it pertains to the October 29, 2024 order that upheld the orphans' court's prior decree that adjudicated Appellant a totally incapacitated person and continued its appointment of the Agency as Appellant's permanent plenary guardian.

[2]    There are two classes of guardian: (1) guardian of the person, who assumes primary physical responsibility for the care and custody of the incapacitated individual and (2) guardian of the estate, who is entrusted with the control of the property of the incapacitated individual.  The spheres of authority of a guardian of the person and of a guardian of the estate are distinct and mutually exclusive.

*In re C.A.J.*, 319 A.3d 564, 572 (Pa. Super. 2024) (citations and quotation marks omitted).

deteriorating physical condition, is presently in need of both a guardian of her person and her estate." Orphans' Court Decree, 12/6/23. The orphans' court appointed the Agency to serve as Appellant's emergency plenary guardian for a period of 72 hours, and appointed Ethan Wilt, Esquire ("Attorney Wilt") to represent Appellant. *Id.* Pursuant to a petition seeking an extension of the guardianship appointment, the orphans' court extended the emergency plenary guardianship to December 26, 2023. Orphans' Court Decree, 12/7/23.

On December 12, 2023, Appellant filed a petition seeking a full guardianship proceeding, which the orphans' court scheduled for January 18, 2024. On December 20, 2023, the orphans' court, pursuant to a petition filed by the Agency, issued a rule to show cause why Appellant should not be adjudicated a totally incapacitated person with the issue to be resolved at the January 18, 2024 proceeding. Rule to Show Cause, 12/20/23.

On December 22, 2023, the Agency filed a petition to extend its appointment as emergency plenary guardian for Appellant to January 15, 2024. On December 27, 2023, the orphans' court issued a decree extending the emergency plenary guardianship to January 15, 2024. Orphans' Court Decree, 12/27/23.

On January 11, 2024, the orphans' court granted Appellant's consented-to request for a continuance of the full guardianship proceeding until after a complete psychological evaluation could be performed on Appellant in February 2024. Orphans' Court Order, 1/11/24. On January 19,

2024, the Agency filed a third petition for an extension of its appointment as emergency plenary guardian for Appellant. That same day, the orphans' court granted the Agency's request and extended its appointment as emergency plenary guardian to February 14, 2024.[3] Orphans' Court Decree, 1/19/24.

On February 14, 2024, the orphans' court found that

[Appellant] is disabled to the extent that she suffers from physical and mental conditions which prevent her from being able to [] maintain[ her independence]. She has other related medical concerns which substantially impair her ability to provide for her own care, or manage her own finances, and other conditions which are such that she cannot properly take care of herself. She is in immediate need of intervention and care as she is unable to provide for all of her own care. She cannot evaluate information

_____

[3] We note that, pursuant to Section 5513 of the Probate, Estates and Fiduciaries Code, "[a]n emergency order appointing an emergency guardian of the person may be in effect for up to 72 hours." 20 Pa.C.S.A. § 5513. "If the emergency continues, then the emergency order may be extended for no more than 20 days from the expiration of the initial emergency order." *Id.* "An emergency order appointing an emergency guardian of the estate shall not exceed 30 days." *Id.*

Section 5513 states that "[**a**]**fter** expiration of the emergency order[,] or any extension, [appointing an emergency guardian of the person,] a full guardianship proceeding must be **initiated**[.]" *Id.* (emphasis added). Section 5513 further states that **after** the expiration of the 30-day appointment of an emergency guardian of the person's estate, a full guardianship proceeding must be **initiated**. *Id.* (emphasis added). Section 5513 does not, however, explain, upon expiration of an emergency order, or any extension, if permitted, and after the full guardianship proceeding has been initiated but the full guardianship hearing has not yet occurred, whether, or not, the orphans' court is permitted to extend the guardianship appointments beyond the time limitations set forth in Section 5513. Because Appellant has not challenged the January 19, 2024 extension of the emergency plenary guardianships on appeal, we do not, in the case *sub judice*, consider whether, or not, the orphans' court was permitted to grant a second or third extension of the plenary guardianships pursuant to Section 5513.

effectively or make and communicate decisions concerning [the] management of [her] financial affairs or meet essential requirements for her physical health and safety.

Orphans' Court Decree, 2/14/24. As a result of its findings, the orphans' court adjudicated Appellant a totally incapacitated person. *Id.* The orphans' court appointed the Agency to serve as permanent plenary guardian over Appellant's person and estate. *Id.*

On August 26, 2024, the Agency filed a petition for permission to sell Appellant's real property at a public sale pursuant to 20 Pa.C.S.A. § 5521.[4] That same day, Appellant filed a petition seeking a review hearing, pursuant to 20 Pa.C.S.A. § 5512.2, of the orphans' court's adjudication of Appellant as a totally incapacitated person on the ground Appellant's mental and physical condition improved. The orphans' court scheduled a hearing on both matters for October 16, 2024.

On October 16, 2024, the orphans' court conducted a review hearing on the issue of Appellant's incapacity, as well as a hearing on the Agency's petition to sell Appellant's real property. On October 29, 2024, the orphans' court found there "has not been a change in [Appellant's] capacity" and held that Appellant remained a totally incapacitated person. Orphans' Court Order, 10/29/24. That same order also continued the appointment of the Agency as Appellant's permanent plenary guardian. *Id.* In a second order, also issued

_____

[4] Appellant's real property consisted of a residential home located on Barn Street in the borough of Broad Top City, Huntingdon County, Pennsylvania.

on October 29, 2024, the orphans' court granted the Agency permission to sell Appellant's real property. This appeal followed.[5]

Appellant raises the following issue for our review: "Did the orphans' court err in continuing the [Agency's permanent] plenary guardianship of [Appellant's] person and estate?" Appellant's Brief at 2 (extraneous capitalization omitted).

"When an appellant challenges a decree entered by the orphans' court, our standard of review requires that we be deferential to the findings of the orphans' court." *Est. of J.L.C.*, 321 A.3d 999, 1003 (Pa. Super. 2024) (citation and original brackets omitted)). In applying this standard,

> [w]e must determine whether the record is free from legal error and [whether] the [orphans'] court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the [orphans'] court relied are palpably wrong or clearly inapplicable, we will reverse the [orphans'] court's decree.

*Id.* (citation and original brackets omitted).

Section 5512.2(a.1) of the Probate, Estates and Fiduciaries Code states that

> At any time following the issuance of the order establishing guardianship, any interested person may file a petition with the

---

[5] Appellant and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

[orphans'] court to terminate or modify the guardianship. The [orphans'] court shall promptly schedule a hearing or hold a review hearing at any time it shall direct. The hearing shall be held in the presence of the incapacitated person and the incapacitated person's attorney, and the [orphans'] court shall adhere to the procedures and standards as outlined in [S]ection 5512.1(a). If, following the presentation of evidence and testimony from all parties, the [orphans'] court finds that guardianship continues to be necessary and that no less restrictive alternatives exist, the [orphans'] court may order that the guardianship continue. If the [orphans'] court finds that guardianship is no longer necessary or a less restrictive alternative exists, the [orphans'] court shall discharge the guardianship.

20 Pa.C.S.A. § 5512.2(a.1). "[T]he burden of proof, by clear and convincing evidence, shall be on the party advocating continuation of guardianship or expansion of areas of incapacity." 20 Pa.C.S.A. § 5512.2(b). "Clear and convincing evidence is the highest burden in our civil law and requires that the fact-finder be able to come to the clear conviction, without hesitancy, of the truth of the precise fact in issue." *Interest of M.A.*, 284 A.3d 1202, 1212 (Pa. Super. 2022).

An orphans' court may appoint a plenary guardian of the person or a plenary guardian of the estate, or both, "upon a finding that the person is totally incapacitated **and** in need of plenary guardianship services." 20 Pa.C.S.A. § 5512.1(c) and (e) (emphasis added); *see also In re Peery*, 727 A.2d 539, 541 (Pa. 1999) (stating, a guardian is appointed only "upon a finding that the person is totally incapacitated **and** in need of plenary guardian services" (emphasis in original)); *C.A.J.*, 319 A.3d at 572 (stating, "[o]nce a court determines an individual is incapacitated and in need of a guardian, it becomes the court's responsibility to appoint a person or entity to serve as

guardian"). An "incapacitated person" is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he [or she] is partially or totally unable to manage his [or her] financial resources or to meet essential requirements for his [or her] physical health and safety." 20 Pa.C.S.A. § 5501.

Section 5512.1(a)(3) states that the orphans' court is required to make specific findings of fact concerning

> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends[,] and other supports to assist the individual in making decisions and in light of the existence, if any, of less restrictive alternatives. The [orphans'] court shall make specific findings of fact based on the evidentiary record of the absence of sufficient family, friends[,] or other supports and of the insufficiency of each less restrictive alternative before ordering guardianship. Less restrictive alternatives include, but are not limited to:
>
>> (i) Advance directives such as durable power of attorney or trusts.
>>
>> (ii) Living wills.
>>
>> (iii) Health care powers of attorney.
>>
>> (iv) Health care representatives.
>>
>> (v) Financial powers of attorney.
>>
>> (vi) Trusts, including special needs trusts.
>>
>> (vii) Representative payees for individuals receiving Social Security benefits.
>>
>> (viii) Pennsylvania Achieving a Better Life Experience accounts.
>>
>> (ix) Mental health advance directives.

20 Pa.C.S.A. § 5512.1(a)(3). Section 5512.1 further provides that the orphans' court "shall prefer less restrictive alternatives to guardianship and, if no less restrictive alternatives are available and sufficient, limited guardianship." 20 Pa.C.S.A. § 5512.1(a)(6).

Here, the orphans' court made the following findings of fact pertinent to our discussion herein.

> [7. Appellant's] degree of incapacity and lack of financial resources renders her in need of a plenary guardian. While [Appellant's] son and granddaughter in Reading, Pennsylvania, proposed having [Appellant] move in with them so they can care for her, they lack the necessary resources to care for her. Their personal energy and financial resources are already stretched thin, in part because [Appellant's] son has kidney issues so severe that he undergoes regular dialysis treatment and needs a kidney transplant, and [Appellant's] granddaughter already serves as his primary caregiver. That granddaughter is also the primary income earner in the home - something that would change if [Appellant] were to move in with them. Thus, family members are not a viable less-restrictive alternative for [Appellant's] care.
>
> 8. While [Appellant] stated many times that she has friends in the community who would be able to care for her, she had not been able to identify such individuals, and no one from the community has stepped forward as a possible resource for her.

Orphans' Court Opinion, 1/27/25, at 16.

Appellant asserts that the orphans' court erred in finding that Appellant was in need of the appointment of a permanent plenary guardian.[6] Appellant's Brief at 18-27. Appellant argues that "[a]t the review hearing, [the Agency did] not meet its burden with respect to proving the unavailability and insufficiency of less restrictive alternatives" to appointing a plenary guardian. *Id.* at 23. Appellant contends that "[S]ection 5521.1(a)(3) mandates that [the orphans'] court [] make specific findings of fact based on the evidentiary record of the absence of sufficient family, friends or other supports and of the insufficiency of each less restrictive alternative before ordering guardianship." *Id.* at 21 (original brackets and quotation marks omitted). Appellant further contends that "even though the [o]rphans' [c]ourt attempted to set forth its findings regarding the insufficiency and inadequacy of family, friends, or other supports in its [Rule] 1925(a) opinion, it relied exclusively on evidence from the February 14, 2024 guardianship proceeding - as opposed to evidence from the October 16, 2024 review hearing." *Id.* at 23-24. Appellant acknowledges that two expert witnesses produced by the Agency at the October 16, 2024 review hearing "testified that [Appellant] needs 24/7 care" and that Appellant "could return home if this level of care was provided to her." *Id.* at 24.

_____

[6] On appeal, Appellant does not challenge the orphans' court's finding that she remained a totally incapacitated person. Appellant's Brief at 18-27. Rather, Appellant challenges the orphans' court's determination that she continued to be in need of a permanent plenary guardian. *Id.* Therefore, we shall review Appellant's appeal only as it applies to the orphans' court's finding that Appellant continued to be in need of the appointment of a plenary guardian.

Appellant argues that the Agency's claims that she "did not have the money for 24/7 care" or that she would not accept 24/7 care if those services were provided was "entirely speculative." *Id.* at 25. Appellant asserts that the Agency "only put forth superficial evidence about the unavailability and sufficiency of family, friends, or other support." *Id.* Rather, according to Appellant, her "family members were involved in the full guardianship hearing on February 14, 2024," and that she had "friends and members of the community [who] could assist her if she were able to return home." *Id.* at 26. Appellant contends that the Agency "produced no evidence that it attempted to contact these individuals or investigated whether they would be able to assist [Appellant.]" *Id.* In sum, Appellant contends that the Agency's "evidence falls short of the clear and convincing standard."

In continuing the appointment of a permanent plenary guardian, the orphans' court stated,

> [Appellant] is totally incapacitated and in need of 24-hour care and support. She has no family or friends in the immediate area who could assist her with either tasks of daily living or managing her financial affairs to the extent she needs. Realistically, mere "assistance" is insufficient to address her needs. Her dementia has progressed to the point where she cannot be left on her own in an unmonitored environment for any length of time. This is not a situation in which an elderly individual can perform basic care tasks for themselves, and can manage simpler financial transactions such as grocery shopping, needing help only with more physically demanding tasks around the house and more technical financial transactions such as managing retirement accounts and calculating tax payments. It is also not the type of situation in which a partially incapacitated individual can manage [the] tasks of daily living to a degree that regular visits from a home health nurse or home care aide are sufficient to allow them

to remain at home, with a high degree of independence. Even if [Appellant] had the financial resources to repair her home, pay off her mortgage and debts, and pay for regular nursing care, she would still require in-home care on a 24-hour basis that is the equivalent of the care she receives at [the skilled nursing facility].

Orphans' Court Opinion, 1/27/25, at 22.

At the review hearing, Dr. Wayne R. D'Araro ("Dr. D'Araro"), a psychologist licensed by the Commonwealth of Pennsylvania and admitted, at the October 16, 2024 review hearing as an expert in the field of neuropsychology, diagnosed Appellant as suffering from major neurocognitive disorder due to Alzheimer's disease without behavioral disturbance. N.T., 10/16/24, at 5. Dr. D'Araro opined that, due to her medical diagnosis, Appellant could not "safely and effectively reside independently without 24/7 monitoring and supervision." *Id.* at 7. As Dr. D'Araro explained, upon her admission to the skilled nursing facility, Appellant's nutritional status improved and she is having her medications managed, having her blood sugar levels for her diabetes monitored, and receiving physical stimulation by interacting with staff and other residents. *Id.* at 6. Dr. D'Araro explained that, while he understood Appellant's desire to return home, "[u]nless she had somebody there 24/7 assisting her with medication or monitoring her blood [sugar] level[s]" and without "stimulation from interaction with others," Appellant "could quickly decompensate both medically and from a cognitive perspective." *Id.* Dr. D'Araro stated that Appellant indicated she had friends and members of her church who would be able to assist her if she returned home but that Appellant "was very vague in discussing who those friends

might be or how much they would assist" and it "did not sound like a situation where they would be available 24/7 to provide her with assistance." *Id.* at 13-14.

Dr. Margaret Hallahan ("Dr. Hallahan"), Appellant's treating physician at the skilled nursing facility, stated that she had concerns about Appellant from a medical standpoint, including her ability to take care of her daily living situation and manage her medications without the 24/7 supervision she was currently receiving. *Id.* at 26. Dr. Hallahan stated that she agreed with Dr. D'Araro's assessment that Appellant needed a "very controlled environment" because she was not capable of "manag[ing] her own medications and [avoiding financial] troubles[.]" *Id.* at 27. Dr. Hallahan stated that, when discussing Appellant's desire to return home, Appellant stated she would walk to her doctors' appointments (because Appellant no longer had a car), that people from her church would assist her with getting her medications and groceries, and that Appellant had a friend who was an emergency medical technician that could help her. *Id.* at 29-30.

Lori Heaton ("Heaton"), a director with the Agency, testified that Appellant was doing very well at the skilled nursing facility and "was probably the most popular person" and "had lots of friends." *Id.* at 36. Heaton explained that Appellant vacillated between returning home, selling her house and relocating to Reading, Pennsylvania to live with her family, and staying at the skilled nursing facility. *Id.* at 36-37. When asked if Appellant had "a lot of friends come visit her[,]" Heaton stated "[n]ot really[.]" *Id.* at 44-45.

Heaton also explained that, while Appellant's family was present at the February 14, 2024 hearing, no family members have visited Appellant in the last 6 months and no one has stepped forward indicating that they would be able to provide Appellant with 24/7 care. *Id.* at 45-46.

Based upon the record, we discern no abuse of discretion or error of law in the orphans' court's order that continued the appointment of the Agency as the permanent plenary guardian for Appellant. The orphans' court found, and the record supports, that Appellant is in need of 24/7 care and support and she has no family or friends who are able to provide the necessary care. The Agency presented clear and convincing evidence that, while Appellant's family attended the February 14, 2024 hearing that resulted in Appellant being adjudicated a totally incapacitated person and in the appointment of the Agency as her permanent plenary guardian, no family members have visited Appellant in more than 6 months. Moreover, no family member or friend has stepped forward and expressed a desire, willingness, or ability to provide Appellant with the necessary 24/7 care and support.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 07/18/2025