J-A22003-24

2024 PA Super 261

| | | |
|---|---|---|
| IN THE INTEREST OF: C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 505 WDA 2024 |

Appeal from the Order Entered April 17, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000177-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

OPINION BY MURRAY, J.: **FILED: November 6, 2024**

K.S. (Mother) appeals from the order granting the petition filed by the Allegheny County Office of Children, Youth, and Families (the Agency or CYF), and involuntarily terminating Mother's parental rights to C.S. (a son born in May 2022) (Child).[1] Upon careful review, we affirm.

The orphans' court explained how Mother came to the attention of CYF:

At [C]hild's birth, he tested positive for cocaine, methadone and fentanyl. Mother identified A.H. as Father; however, paternity has not been established. Mother has two other children that were in CYF['s] care since 2015. … Mother struggled in the past with housing, drug and alcohol [abuse], and intimate partner violence …. At the time of [] Child's birth, CYF visited Mother at the UPMC Magee-Womens Hospital and determined Mother and Father were homeless and lived in an abandoned building in the Homewood section of the City of Pittsburgh.

---

[1] The orphans' court also involuntarily terminated the rights of A.H. (Father). Father is not a party to the instant appeal.

Mother received assistance [from] UPMC Magee-Women[]s Hospital to address her drug usage throughout the course of the pregnancy for methadone, crack cocaine, and fentanyl …. The hospital facilitated Mother's admission into the Sojourner House[, a substance abuse facility, for methadone maintenance]. Mother admitted[] us[ing] said substances during the pregnancy term.

Father was not assessed at that time by CYF due to an active arrest warrant. Mother also had an arrest warrant at the time of Child's birth and was not assessed by CYF. Child was adjudicated dependent on August 24, 2022. Aggravated circumstances were found in this case due to Child having no contact with either parent for six[ ]months. …

….

CYF created a family plan to address the issues that led to Child's removal and placement. In addition to establishing and maintaining contact with the [A]gency, the goals for the family included: drug and alcohol [treatment]; mental health; visitation and parenting; as well as obtaining housing.

Orphans' Court Opinion, 5/30/24, at 5-8 (footnotes omitted).

On July 21, 2023, CYF filed a petition to involuntarily terminate the parental rights (TPR petition) of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). CYF specifically alleged that Child remained in placement "due to [M]other's failure to successfully complete her Family Plan and court-ordered goals." TPR Petition, 7/21/23, at 4 (unpaginated). On October 4, 2023, Mother, through legal counsel,[2] requested a contested hearing date, which the orphans' court scheduled for April 11, 2024.

_____

[2] Jeffrey K. Eisenberg, Esquire (Counsel), represented Mother in the TPR action.

Pertinently, however, on January 4, 2024, CYF filed a motion seeking the appointment of a guardian *ad litem* (GAL) for Mother. Therein, CYF averred that Mother was "currently hospitalized and in a coma." Motion to Appoint GAL, 1/4/24, at 1 (unpaginated). The orphans' court scheduled a hearing on CYF's motion for February 14, 2024.

At the hearing, Counsel objected to the appointment of a GAL for Mother. N.T., 2/14/24, at 29. Counsel acknowledged that Mother was incapacitated, but maintained the orphans' court had no authority to appoint a GAL to represent an adult in a TPR action. **See id.** at 4, 25. Counsel represented that Child's maternal grandmother (Grandmother), "initiated proceedings in Orphans' Court to obtain guardianship over [Mother]. Not just [GAL,] but full guardianship." **Id.** at 3. Counsel requested a continuance in order for the Orphans' Court Division to adjudicate Grandmother's guardianship petition. **See id.** at 6.

At the conclusion of the hearing, the orphans' court rejected Counsel's arguments and indicated it intended to appoint Mother a GAL over Counsel's objection. **See id.** at 31. The orphans' court emphasized Child's need for permanency, and explained that waiting for Grandmother's petition to be resolved would require an indeterminate delay of the termination proceedings. **See id.** at 7, 12, 14.

The orphans' court held a status conference on March 20, 2024, where Counsel renewed his objection to the appointment of a GAL for Mother. N.T.,

3/20/24, at 8. Counsel explained that he had spoken with Mother "prior to her inability to communicate," was aware that she intended to contest the Agency's TPR petition, and that Mother would not benefit from the appointment of a GAL. *Id.* at 10. The orphans' court inquired of Counsel whether Mother would suffer any harm if it appointed Mother a GAL. *Id.* at 12. Counsel stated that if the GAL's recommendation did not conflict with Mother's desire to contest the TPR petition, "it doesn't seem like there would be any harm if there were a GAL appointed." *Id.* at 13. On March 25, 2024, the orphans' court appointed Todd Zwikl, Esquire, as Mother's GAL. *See* Order, 3/25/24.

The TPR hearing proceeded as scheduled on April 11, 2024. Due to her incapacity, Mother was not present, but was represented by Counsel. KidsVoice represented Child, and indicated there was no conflict between Child's best and legal interests. *See* N.T., 4/11/24, at 125; *see also* N.T., 10/4/23, at 8-9. Prior to the hearing, Mother's GAL advised the orphans' court that Mother "had no ability to speak to [him] or to exchange information or respond to anything [he] asked of her." N.T., 4/11/24, at 5. Mother's GAL opined that Mother's "rights … are being adequately represented by" Counsel, and offered no further opinion. *Id.* at 10. The orphans' court accepted GAL's written report into evidence, and GAL did not remain for the rest of the proceeding. *See id.* at 14.

Following GAL's report to the orphans' court, the Agency presented the testimony of Jolene James (Ms. James), Assistant Director of Nursing at Quality Life Services; Dawn Johnson (Ms. Johnson), a CYF caseworker; and Lori Marshall (Ms. Marshall), A Second Life caseworker.

Ms. James testified that Mother was admitted to Quality Life Services, a health care facility offering short-term rehabilitation and long-term care services, on February 12, 2024. *See id.* at 16-17. Ms. James explained that Mother required 24-hour care as the result of an anoxic brain injury. *See id.* at 17-18. Mother's condition rendered her unable to communicate or perform any basic functions to care for herself. *See id.* at 18. In response to Counsel's question concerning whether there had been any improvement in Mother's ability to communicate since her admission date, Ms. James testified:

> [Mother] has a nystagmus of her eyes, which means they both bounce back and forth. She turns towards a voice, but she does not focus on any voices or faces. So is she able to make any kind of eye contact, blink for communication? No, she's not. Has she made any changes or improvements? No.

*Id.* at 19.

The orphans' court summarized the evidence adduced from Ms. Johnson's testimony, as follows:

> Mother did not … provide any proof [of] completion [of] any drug and alcohol treatment [program] …. Mother was incarcerated for approximately eighteen months and did not offer any evidence of programs completed.
>
> Mother never complied with the housing goal throughout the pendency of this case[,] as she was either homeless, lived in abandoned buildings, or was incarcerated.

- 5 -

Mother did not meet the parenting or visitation goal. Mother has two other children[, who are] not in her care. Although [] Child remained hospitalized after testing positive [for illegal drugs] at birth, Mother did not visit Child[,] nor seek visitation after giving birth.

Child has been in CYF's care since June 7, 2022. Since that time, Mother had one virtual visit with Child while partially incarcerated at the Renewal Center[, a community corrections organization]. CYF attempted to set up video visits between Mother and Child through caseworkers at the Allegheny County Jail, but the visits never occurred due to difficulties from Mother being transported to and from the Westmoreland County Jail, where she remained incarcerated until November 2023.

Child resides with maternal aunt and uncle[ (foster parents), who are preadoptive resources]. Th[e orphans' court] appointed an education and medical decision maker for [] Child due to [medical] issues that required tubes to be inserted into his ears, and neither [Mother nor Father] was available to sign off on the procedure.

Lastly, Mother did not participate in [court-ordered] mental health treatment. … Mother did not undergo a mental health evaluation. Furthermore, Mother did not attend any mental health treatments since Child's birth.

Orphans' Court Opinion, 5/30/24, at 8-10 (footnotes omitted).

Ms. Marshall testified that her role at A Second Chance, Incorporated, was to ensure Child's foster parents were satisfying Child's needs. N.T, 4/11/24, at 90. Ms. Marshall opined that Child "has a very good relationship" with foster parents. *Id.* at 94; *see also id.* at 86 (Ms. Marshall testifying that removal of Child from foster parents' home would be detrimental "[b]ecause he does have a healthy bond [with foster parents], and that's the only space that [Child] has ever known"); *id.* at 98 (Ms. Marshall testifying that foster

parents "go above and beyond" in their care for Child). Additionally, Ms. Marshall testified that foster parents also care for Child's biological brother and half-sister, and Child's siblings, too, have a positive and beneficial relationship with Child. *See id.* at 78, 98-100.

At the close of testimony, CYF moved for the admission of, *inter alia*, an "interactional evaluation" report, authored by Dr. Patricia Pepe (Dr. Pepe), a licensed psychologist, after she assessed the bond between Child and foster parents. *See id.* at 103; *see also* CYF Exhibit 6. Mother did not object to the report's admission. *See id.* Dr. Pepe's report concluded, in pertinent part, as follows:

> [Child] has been placed with … [foster parents] since his release from the hospital following his birth. According to [foster mother], … [Mother] is now in a coma and not expected to survive. [Foster parents] are also providing a home for [Child's] sibling[s]. [Child] is obviously thriving in [foster parents'] care to the point that he has exceeded the expectations of his developmental specialist and no longer requires services. …. [Child] exhibited multiple bonding behaviors suggestive of a positive and primary attachment toward his foster parents. He was consistently interacting with both [foster parents], always with a big and bright smile. Further, [foster parents] are obviously very committed to [C]hild.

CYF Exhibit 6 at 4.

At the conclusion of the termination hearing, the orphans' court took the matter under advisement. On April 17, 2024, the orphans' court filed an order terminating Mother's parental rights to Child. Mother filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement. The orphans' court has also complied with Rule 1925.

- 7 -

Mother raises the following issues for our review:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in appointing a [GAL] for Mother in the [TPR] matter?

2. Did the [orphans'] court abuse[] its discretion and/or err[] as a matter of law in considering Mother's current physical condition when such condition was not identified or alleged in the petition to involuntarily terminate parental rights as a condition that has kept [C]hild in care?

3. Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(1)?

4. Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2)?

5. Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(5)?

6. Did the [orphans'] court abuse its discretion and/or err as a matter of law in involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(8)?

7. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Mother's Brief at 7-8 (issues reordered).

We review the termination of parental rights for an abuse of discretion.

*See In the Int. of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023). This standard of

review requires appellate courts to

accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual

findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As [the Pennsylvania Supreme Court] discussed in [*In re:*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)], there are clear reasons for applying an abuse of discretion standard of review…. [U]nlike trial courts, appellate courts are not equipped to make fact-specific determinations on a cold record, where trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

In her first issue, Mother faults the orphans' court for appointing Mother a GAL, arguing "[t]here is no statute or rule empowering a[n orphans'] court in a [TPR] proceeding to appoint a [GAL] for an adult person." Mother's Brief at 27.

The Pennsylvania Rules of Orphans' Court Procedure define a GAL as "a fiduciary who is appointed by a court in a legal proceeding to represent an individual or class of individuals under a legal disability." Pa.R.O.C.P. 1.3. An orphans' court derives its authority to appoint GALs in TPR actions from the

Adoption Act. *See* 23 Pa.C.S.A. § 2313(a) (the court may appoint a GAL to represent a child in a TPR action when it is in the bests interests of the child). Prior to its June 30, 2022, rescission and replacement, Orphans' Court Rule 15.4(c)(1) (pre-rescission Rule 15.4) provided a limited avenue for the appointment of a GAL for a parent in a TPR action. *See* Pa.R.O.C.P. 15.4(c)(1) (effective to June 30, 2022, "the court shall appoint [a **minor** parent] a [GAL,]" "unless the court finds the parent is already adequately represented").

The only other source of authority for an orphans' court to appoint a GAL is found in Orphans' Court Rule 5.5(a)(1). The Rule provides, in relevant part, as follows:

> **(a)** On petition of the accountant or any interested party, or upon its own motion, the court may appoint [a GAL] **if the court considers that the interests of the non-*sui juris* individuals are not adequately represented**:
>
> > (1) **a** [**GAL**] **to represent** a minor or **a person believed to be incapacitated** under the provisions of Chapter 55 of Title 20, **but for whom no guardian of the estate is known to have been appointed** by a Pennsylvania court or by the court of any other jurisdiction[.]

Pa.R.O.C.P. 5.5(a)(1) (emphases added).

"There are two classes of guardian: (1) guardian of the person, who assumes primary physical responsibility for the care and custody of the incapacitated individual[,] and (2) guardian of the estate, **who is entrusted with the control of <u>the property</u> of the incapacitated individual**." *See In re C.A.J.*, 319 A.3d 564, 572 (Pa. Super. 2024) (citation omitted; emphasis added)). We are further cognizant that Rule 5.5 does not grant a

GAL "sweeping powers" over the financial and medical decisions of an incapacitated person. *See Estate of J.L.C.*, ___ A.3d ___, 2024 PA Super 151, *8 (Pa. Super. filed July 22, 2024).

Chapter 55 of Title 20 (Decedents, Estates and Fiduciaries) sets forth the statutory law concerning incapacitated persons and guardianship. Section 5502 explains "it is the purpose of this chapter to promote the general welfare of all citizens by establishing a system which permits incapacitated persons to participate as fully as possible in all decisions which affect them," and to "protect[] their rights…." 20 Pa.C.S.A. § 5502. An "incapacitated person" is defined as

> an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

*Id.* § 5501. Sections 5511 and 5513, respectively, describe the procedures for an individual to petition to serve as guardian and emergency guardian of an incapacitated person. *See id.* §§ 5511, 5513. Pertinently, however, "**the court may not grant to a guardian powers** controlled by other statute, including, but not limited to, the power… [t]**o consent, on behalf of the incapacitated person, to the relinquishment of the person's parental rights.**" *Id.* § 5521(f)(2) (emphasis added).

In her scant, one-page argument, Mother cites *In re J.L.P.*, 215 A.3d 627, 1552 MDA 2018 (Pa. Super. 2019) (unpublished memorandum),[3] for the proposition that "an incapacitated parent is not entitled to a GAL in a TPR matter when that parent already has legal counsel providing adequate representation …." Mother's Brief at 27-28. Mother maintains the "appointment of a GAL for Mother was an error that compromised the framework of the TPR proceeding and constitutes a structural error… not subject to [a] harmless error analysis …." *Id.* at 28 (citing *In re L.B.M.*, 161 A.3d 172 (Pa. 2017)).

In response, CYF relies on *In re S.C.B.*, 990 A.2d 762 (Pa. Super. 2010) (discussed *infra*), and pre-rescission Rule 15.4(c)(1).[4] CYF Brief at 47. CYF concedes that "a GAL is not required when a parent is adequately represented by counsel." *Id.* CYF maintains, however, that "the failure of the [o]rphans' [c]ourt [j]udge in the *S.C.B.* case to mandate that the GAL appear at hearings was found to be harmless error." *Id.* CYF continues:

> The purpose for the GAL [in the instant case] was to ensure that
> [Mother]'s rights were protected when [Mother] was not able to

_____

[3] In her brief, Mother acknowledges that unpublished memoranda filed **after May 1, 2019**, may be cited for their persuasive value. **See** Mother's Brief at 28 (citing Pa.R.A.P. 126(b)). **In re J.L.P.** is an unpublished memorandum decision that this Court filed on **March 7, 2019**.

[4] In its brief, CYF cites to "Pa.O.C. Rule 15.2(c)(1)." CYF Brief at 47. However, Rule 15.2 defines various terms, and does not contain subsections. **See** Pa.R.O.C.P. 15.2. As CYF cites to the Rule in conjunction with **In re S.C.B.**, 990 A.2d at 768 (analyzing pre-rescission 15.4(c)(1)), we discern CYF relies on pre-rescission Rule 15.4(c)(1).

communicate with her attorney. The only other option would have been for the TPR proceedings to be put on indefinite hold while the [orphans'] court waited for a decision to be made in Adult Orphans' Court[,] which would have in turn violated [Child]'s rights to permanency. The [o]rphans' [c]ourt did not err in appointing a GAL for [Mother,] and then promptly discharging the GAL after 17 days. In applying the facts of the *S.C.B.* case to the case at hand, appointing a GAL and then dismissing the GAL once it was determined there was no need for one due to [Mother] having competent counsel, would actually only serve to ensure [Mother]'s rights were adequately protected. Therefore, it was not an error[,] or at most a harmless error.

*Id.* at 47-48.

Upon review, *In re S.C.B.* appears to be the only decisional authority touching on Mother's first issue, albeit in *dicta* and in connection with a now-rescinded Orphans' Court Rule. In *In re S.C.B.*, CYF petitioned for the involuntary termination of an **adult** mother's parental rights. *Id.* at 765. Additionally, CYF filed a motion to appoint a GAL for mother, "based on her mental health issues[,]" which the lower court granted on February 8, 2008. *Id.* Mother retained private counsel on February 29, 2008. *Id.* On November 7, 2008, mother's GAL filed a written report with the trial court. *Id.* The TPR hearing occurred over six days, between February and April of 2009. *Id.* GAL for mother did not attend; mother's counsel did not object to GAL's absence. *Id.* at 765-66. The trial court ultimately granted CYF's TPR petition, and mother appealed, arguing, in part, that the trial court improperly allowed the TPR hearing to proceed in the absence of mother's GAL. *Id.* at 766.

The *S.C.B.* Court first determined that mother waived the issue. *Id.* at 768. Nevertheless, even had mother not waived the issue, the *S.C.B.* Court

- 13 -

opined that "the reasoning behind" pre-recission Rule 15.4(c)(1) "is equally persuasive when an allegedly mentally incompetent parent has adequate representation by her own counsel. Thus, the appointment of a [GAL] is not required in such a situation." *Id.* at 769. The Court concluded:

> [W]e agree with the trial court that the continued representation of [m]other by the [GAL] was unnecessary after [m]other retained her own private counsel[,] who adequately represented her interests. Thus, the trial court did not commit an abuse of its discretion in failing to require the [GAL] to appear at the hearings. Any resultant error from the trial court's failure to enter such an order or to permit the [GAL] to withdraw his representation was harmless.

*Id.* (footnote omitted). Significantly, the *S.C.B.* Court did not identify (nor was it tasked with identifying) the authority by which the trial court could appoint an adult mother a GAL in a TPR proceeding, apart from pre-rescission Rule 15.4(c)(1).

Instantly, in its Rule 1925 opinion, the orphans' court acknowledged that,

> [a]lthough Mother may meet the *statutory definition* of an incapacitated person as defined under [Section] 5501, the [orphans' c]ourt also recognizes its jurisdictional limitations and inability to make the all[-]encompassing legal determination of general incapacity in another designated division of the Allegheny County Court of Common Pleas.[5] The [c]ourt has a general

---

[5] The Honorable David L. Spurgeon presided over both the dependency proceedings in Allegheny County's Family Division, and the termination proceedings in the Orphans' Court Division. The court explained that "[a]lthough TPR proceedings would fall within the jurisdiction of the Orphans' Court Division, these cases are heard by the judge in Family Division who presided over the dependency proceeding under the 'one judge[,] one family'
*(Footnote Continued Next Page)*

obligation to safeguard the integrity of proceedings and ensure that all parties' rights are protected. There is no guidance on how an arguably incapacitated parent can participate in their termination hearing.

Orphans' Court Opinion, 5/30/24, at 30 (emphasis in original; footnote added).

The orphans' court further explained why it appointed Mother a GAL, rather than delay the TPR hearing in order for Grandmother to litigate her guardianship petition:

> Mother's counsel … represented to the court that [Grandmother] was in the process of filing for guardianship in the Orphans' Division[,] and learned that it would require at least "60 days" for the "paperwork to be generated[,]" and there was no guarantee that [guardianship] would be granted. … [Grandmother's counsel] proffered to the court that [Grandmother] filed a guardianship petition for Mother, but [Grandmother's counsel] anticipated it would be three to four months before a hearing date was set in the Orphans' Court Division[,] and that the petition would not be resolved prior to the TPR hearing date. [Grandmother's counsel] also informed the court that although there was a remedy of an emergency guardian appointment in Orphans' Court, [Grandmother] had not sought such an action. …
>
> The [c]ourt reiterated that the Child has been in CYF care since the week of his birth[,] and there is no guarantee of when, or if, [Grandmother]'s guardianship petition would be granted. "[C]ourts must keep … the ticking clock of childhood ever in mind. Children are young for a scant number of years and we have an obligation to see [to] their healthy development quickly." [*In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013)]. Upon inquiry by the court

_____

premise." Orphans' Court Opinion, 5/30/24, at 28 (citing 42 Pa.C.S.A. § 6351(i)(1)-(2) ("A judge who adjudicated the child dependent or who has conducted permanency hearings or other dependency proceedings involving the child may be assigned to the orphans' court division for the purpose of hearing proceedings relating to" TPR and adoption petitions)).

as to the harm by appointing a GAL to ensure that Mother had [a] fair proceeding, **Mother's [C]ounsel agreed that there would be no harm if [GAL] did not contradict [Mother]'s direction of proceeding in a contested hearing**. No party at that point had presented the court with any evidence of Mother's alleged incapacity other than statements made by counsel. Although Mother had competent counsel, CYF felt another action was needed. Th[e orphans'] court acted with foresight rather than hindsight to ensure the rights of all were protected and a fair hearing occurred. … At no time during the brief appointment of GAL for Mother, was there a contradiction in Mother's legal direction. … **[M]other was not aggrieved by the court's action and nothing about it affected her rights or [C]ounsel's representation of her. Thus, no harm or prejudice occurred.**

Orphans' Court Opinion, 5/30/24, 31-33 (footnotes omitted; emphases added).

The orphans' court's factual recitation is supported by the record. However, upon review of the foregoing authority, we agree with Mother that the orphans' court erred by appointing Mother a GAL.

Rule 5.5(a)(1) permits an orphans' court to appoint an individual a GAL where he or she is believed to be incapacitated and "for whom no **guardian of the estate** is known to have been appointed …." Pa.R.O.C.P. 5.5(a)(1) (emphasis added). Because Rule 5.5(a)(1) contemplates the appointment of a GAL in matters related to an incapacitated person's finances and property, it is inapplicable to TPR actions; **see also** Pa.R.O.C.P. 15.1 ("The practice and

procedure with respect to adoptions shall be as provided by Act of Assembly and **the Rules under this Chapter XV**." (emphasis added)).[6]

Even if Rule 5.5(a)(1) applied in TPR actions, however, it would not have empowered the orphans' court to appoint Mother a GAL under the facts of this case. Although ***In re S.C.B.***'s analysis was premised on pre-rescission Rule 15.4(c)(1), its reasoning would apply with equal force to Rule 5.5(a)(1)'s proviso that a court may appoint a GAL to a person "believed to be incapacitated" **and** who is not "adequately represented." As it is uncontested that Mother was adequately represented at the time the orphans' court appointed GAL, the orphans' court lacked the authority to appoint GAL. ***See In re S.C.B.***, 990 A.2d at 769.

Nevertheless, we agree with the orphans' court that this error was harmless. The sole authority Mother relies upon for her assertion that GAL's appointment constituted a "structural error" "that compromised the framework of the TPR proceeding" is plainly distinguishable. Mother's Brief at 28; ***see also In re L.B.M.*** 161 A.3d at 183 ("[T]he **failure** to appoint **counsel** for a **child** involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to harmless error analysis"

---

[6] We also observe that guardians are specifically limited in their decision-making power with respect to TPR actions. ***See*** 20 Pa.C.S.A. § 5521(f)(2) (stating a guardian to an incapacitated person is not permitted to consent "to the relinquishment of the person's parental rights.").

(emphasis added)). Just as the erroneous appointment of a GAL to a parent in *In re S.C.B.* constituted harmless error, the same is clearly true in the instant case.

Here, Counsel conceded that appointing Mother a GAL would cause her no harm, provided the GAL did not contradict Mother's desire to proceed with a contested TPR hearing. *See* N.T., 3/20/24, at 13 (Counsel stating, "it doesn't seem like there would be any harm if there were a GAL appointed"). At the TPR hearing, GAL offered no opinion, and deferred to Counsel. *See* N.T., 4/11/24, at 10-11. Accordingly, the orphans' court's error caused Mother no prejudice and was harmless. Mother's first issue merits no relief.[7]

In her second issue, Mother claims the orphans' court erred by "considering Mother's current physical condition when such condition was not identified or alleged" in the Agency's TPR petition. Mother's Brief at 7. In her half-page argument, Mother claims "[t]he record contained no competent evidence for the [orphans'] court to determine the specific nature or duration of any alleged physical incapacity of Mother." *Id.* at 26. Mother continues, "[t]he record is also clear that Mother's physical condition was neither a reason

---

[7] Even were we permitted to treat the non-precedential decision Mother relies upon as persuasive authority, it contradicts Mother's claim that the appointment of a GAL cannot be harmless error. *See In re J.L.P.*, 215 A.3d 627 (Pa. Super. 2019) (unpublished memorandum at 11) ("Because [m]other had counsel to represent her interests, and because she was an adult, we agree that the court erred by appointing a GAL. Nonetheless, it is clear that the court's error was harmless.").

why [Child] was removed and placed in care, nor a basis pleaded by CYF to establish a finding of repeated incapacity of Mother." *Id.* at 27 (citation omitted).

Preliminarily, we consider whether Mother has preserved this issue. In its Rule 1925 opinion, the orphans' court opines "Mother's failure to object resulted in waiver of this issue." Orphans' Court Opinion, 5/30/24, at 26. Mother counters that she "clearly preserved this issue during final argument with the [orphans'] court." Mother's Brief at 27 (citing N.T., 4/11/24, at 116). Because the record confirms that Mother failed to lodge an objection, we agree with the orphans' court that Mother waived her second issue. *See Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("[T]o preserve a claim that evidence was admitted in error, the offended party must timely object to the admissibility of the evidence and state a specific ground for the objection." (citations omitted)).

However, even if Mother had preserved her challenge with a timely objection, it would afford her no relief.

We review questions concerning the admissibility of evidence under the following standard:

> [T]he decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is abused if, *inter alia*, the orphans' court overrides or misapplies the law.

*In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018) (citations omitted).

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "The well-settled test for relevancy states that evidence is relevant if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Interest of S.K.L.R.*, 256 A.3d at 1124 (quoting Pa.R.E. 401). In a TPR proceeding, the orphans' court, as fact-finder, "should assign that evidence the appropriate weight to which it is entitled in reaching its factual and legal conclusions." *Id.*

The content of a petition to involuntarily terminate parental rights is governed by 23 Pa.C.S.A. § 2512 and Orphans' Court Rule 15.10. Pursuant to Section 2512, "[t]he petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights." 23 Pa.C.S.A. § 2512(b). Moreover, Rule 15.10 provides, in pertinent part:

(a) Petition. A petition for involuntary termination of parental rights under 23 Pa.C.S.[A.] §§ 2511-2512 shall contain the following averments:

* * *

(10) a reference to the applicable subsection(s) of 23 Pa.C.S.[A.] § 2511(a) providing the ground(s) for termination and specific facts to support terminating the parental rights of the subject birth parent pursuant to the subsection(s) referenced[.]

Pa.R.O.C.P. 15.10(a)(10).

It is undisputed that CYF did not plead additional facts after Mother suffered a debilitating brain injury. However, Counsel was clearly aware of

- 20 -

Mother's condition prior to the April 11, 2024, TPR hearing. *See* N.T., 2/14/24, at 25 (Counsel stating Mother "meets the definition of incapacitated persons under [Section] 5510, Title 20."); Motion to Appoint GAL, 1/4/24, at 1 (unpaginated) (CYF averring Mother was "currently hospitalized and in a coma"). Pursuant to Orphans' Court Rule 1.2(b), the Orphans' Court Rules

> shall be liberally construed to secure the just, timely and efficient determination of every action or proceeding to which they are applicable. The court at every stage of any action or proceeding may disregard any error or defect of procedure that does not affect the substantive rights to the parties in interest.

Pa.R.O.C.P. 1.2(b).

Upon review, we conclude the orphans' court did not abuse its discretion by considering evidence of Mother's physical condition. Counsel was aware of Mother's condition, and Mother suffered no harm as a result of CYF's failure to amend its original TPR petition. Accordingly, if preserved, Mother's second issue would merit no relief.[8]

Mother next argues the orphans' court improperly terminated her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1). Mother's Brief at 18.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

---

[8] Mother's second claim would also fail because the orphans' court "did not rely on Mother's current physical incapacity during the [Section] 2511(a) analysis[,] as there was overwhelming evidence to support termination." Orphans' Court Opinion, 5/30/24, at 27; *see also id.* at 27-28 (the orphans' court detailing evidence of Mother's inability to satisfy parental duties and responsibilities).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [Section] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [Section] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 48 (Pa. Super. 2024) (citation omitted). "The standard of 'clear and convincing' evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted). Finally, this Court need only agree with the orphans' court as to "any one subsection of [Section] 2511(a), in addition to [Section] 2511(b), in order to affirm the termination of parental rights." *Int. of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (citation omitted).

Instantly, we examine Mother's challenge pursuant to Section 2511(a)(1), which provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

To satisfy Section 2511(a)(1), the petitioner "must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Adoption of B.G.S.*, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted); *see also In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998) ("Section 2511[(a)(1)] does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties." (citation omitted; emphasis in original)).

In applying Section 2511(a)(1),

[t]he court should consider the entire background of the case and not simply … mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of h[er] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re Adoption of A.C.*, 162 A.3d 1123, 1129 (Pa. Super. 2017) (citations and paragraph break omitted). However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. *In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

Regarding the definition of "parental duties," our Supreme Court has explained:

> Our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert [herself] to take and maintain a place of importance in a child's life. Fortitude is required, as **a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities**.

*Id.* (citations, some quotation marks, and brackets omitted; emphasis added).

Mother asserts "[t]he record is clear that Mother made repeated attempts to not only address her [parenting] goals through entering treatment[,] but also by seeking visitation with [Child]." Mother's Brief at 21. Mother asserts "it was the fault of the system[,] and not Mother[,] that visits had not occurred while Mother was incarcerated." *Id.*

Conversely, the orphans' court cogently summarized its findings with respect to Section 2511(a)(1) as follows:

> [F]rom the time of Child's birth to the [] TPR hearing, Mother did nothing substantial to address her drug use. [Ms.] Johnson testified credibly about Mother's unwillingness to address her substance abuse disorder. [N.T., 4/11/24, at 44-45.] At the onset of this case, Mother was provided the opportunity of a referral [for drug and alcohol treatment], which Mother never completed. [*Id.* at 36.]

- 24 -

Mother failed to complete any substance abuse treatment program that she claimed to have attended. In fact, the [orphans' c]ourt heard testimony that in early September 2022, [Grandmother] informed CYF that Mother had been arrested and was being sent to a rehabilitation facility. Less than one month later, CYF observed Mother panhandling in the City of Pittsburgh[,] and [she] appeared to be under the influence. [*Id.* at 37].

Mother's substance [ab]use intensified when she was not incarcerated. In November 2023, Mother was briefly in a rehabilitation facility in Wilkinsburg, PA, to receive treatment, and was found lying unconscious in the street. She has yet to recover, physically, and is now living in a skilled nursing facility. …

….

… Mother could not secure and maintain housing. CYF presented credible testimony that Mother was either homeless or incarcerated during the lifetime of his case. [*Id.* at 46.] Housing is essential for a child's stability and development.

… Mother failed to have regular and consistent visits with Child. The [orphans' c]ourt was presented with credible testimony … that Mother had only one visit with Child in the twenty-two months Child has been in care. [*Id.* at 47.] Any effort by Mother to arrange visitation only occurred during Mother's incarceration or rehabilitation stays. When Mother was at liberty in the community, she did not attempt to arrange or attend any visitations. … Mother chose not to visit [C]hild when there were no obstacles, including [while C]hild remained in the hospital withdrawing from being born drug positive.

… Mother did not participate in her goal of mental health treatment. Mother was ordered at the shelter care hearings to have a mental health assessment, [of] which she did not avail herself. The record demonstrates that CYF was never able to make a referral for the appropriate level of mental health treatment for Mother because she was either "incarcerated or absent." [*Id.* at 74.] No evidence was presented that contradicted this assertion.

…. Mother did not remedy the conditions that brought Child into CYF's care and custody. No meaningful actions were taken by Mother to remedy such conditions. The evidence presented

clearly established the persistent and continued nature of the issues that have caused Mother to be unable to provide essential care for the Child. Given the fact that the Child has been in [the] care of CYF for twenty-two months, the [orphans' c]ourt justifiably concluded that Mother will not remedy the problems that have made her incapable of functioning as the Child's parent.

Orphans' Court Opinion, 5/30/24, at 15-18 (footnotes omitted).

Our review confirms the orphans' court's findings are supported by the record, and free of legal error. Thus, we discern no error in the orphans' court's finding that Mother failed to perform parental duties for at least six months prior to CYF's filing of the TPR petition. **See S.P.**, 47 A.3d at 827 ("an appellate court must … defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion."). Mother's challenge to termination of her parental rights of Child, under Section 2511(a), is without merit.[9]

In her final issue, Mother challenges termination of her parental rights under 23 Pa.C.S.A. § 2511(b). When the orphans' court finds grounds for termination under Section 2511(a), it must separately consider a child's needs and welfare:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

---

[9] Because we agree with the orphans' court that CYF met its burden with respect to Section 2511(a)(1), we need not address Mother's issues four through six. **See Int. of M.E.**, 283 A.3d at 830.

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. ….

23 Pa.C.S.A. § 2511(b).

"Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *K.T.*, 296 A.3d at 1105. Courts must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "the parental bond is but one part of the overall subsection (b) analysis." *Id.* at 1113.

> The Section 2511(b) inquiry must also include consideration of other important factors such as: the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability.

*Id.* (footnote and citations omitted).

Here, the orphans' court explained its rationale for concluding termination was in Child's best interests:

> In making its decision to terminate Mother's parental rights, the [orphans' c]ourt heavily relied on Dr. [] Pepe's expert report and the conclusions contained therein[,] as well as other witnesses[,] including … [Ms.] Johnson and … [Ms.] Marshall. ….
>
> The [C]hild was placed with foster parents when he was released from the hospital approximately one week after his birth. [CYF Exhibit 6 at 4.] The Child's 12-year-old [half-]sister[,] as well as [C]hild's 11-year-old biological brother[,] are in [the same] foster home. [N.T., 4/11/24, at 78.] Child receives love and

- 27 -

affection in the pre-adoptive home. [*Id.* at 84; *see also* CYF Exhibit 6 at 3.] [Foster parents] reside in a five-bedroom home. [Foster father] has three sons[] who are adults and out of the home, and [foster mother] has two [adult] daughters. [CYF Exhibit 6 at 3.] [Foster parents] are gainfully employed. [Foster mother] is a banker[,] and [foster father] is an [information technology] director. [*Id.*]

[Ms.] Johnson and [Ms.] Marshall credibly testified about their firsthand observations between Child and foster parents. [Ms. Johnson and Ms. Marshall] testified that they had no concerns about the foster parents, as they meet all of [Child's] developmental and medical needs. [N.T., 4/11/24, at 85; *id.* at 98.] The [C]hild was current with medical care[,] and foster parents have assumed all the responsibilities for medical care for the [C]hild. [*Id.* at 98-99.]

….

The court adopted the opinion of Dr. Pepe that the Child "exhibited multiple bonding behaviors suggestive of a positive and primary attachment towards his foster parents." [CYF Exhibit 6 at 4.] [Dr. Pepe] further remarked that the foster family presented as a "very positive permanent resource for [Child]." [*Id.*]

Child has been out of Mother's care since the week of his birth, and[,] because Mother has only had one virtual visit during the life of the case[,] there was no evidence presented that a bond existed with Mother. …. Mother continued to place her own needs and desires above those of [C]hild. When Mother was living in the community, she did not avail herself of visitation nor services to allow her to serve a parental role. Mother has never demonstrated that she could provide [C]hild with safety, security and stability. Mother's substance abuse has remained and worsened to the point of her incapacity. The evidence presented demonstrated that Mother is no longer able to care for herself and requires 24-hour care. Mother is physically incapable of meeting the needs and welfare of a small toddler.

Orphans' Court Opinion, 5/30/24, at 21-24.

We agree with the reasoning and determination of the orphans' court, as it is supported by the record and free of legal error. **S.P.**, 47 A.3d 817, 826-27. The orphans' court acted within its discretion when it credited Dr. Pepe's report and the testimony of Ms. Johnson and Ms. Marshall. **Id.**; **see also L.C.J.W.**, 311 A.3d at 48 ("It is the province of the orphans' court to assess credibility and resolve any conflicts in the evidence, and in doing so it is free to believe all, part, or none of the evidence presented." (citation and quotation marks omitted)). Accordingly, Mother is entitled no relief, and we affirm the order terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2024