J-A11005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| S.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.H. | : | No. 1558 MDA 2024 |
| v. | : | |
| | : | |
| | : | |
| B.H. | : | |

Appeal from the Order Entered October 8, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2021-FC-001007-03

BEFORE: MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: MAY 16, 2025**

S.P. (Mother) appeals[1] from the order finding her in civil contempt for violating the trial court's prior orders related to the underlying child custody action, and imposing sanctions against Mother. Mother claims the trial court improperly (1) held her in contempt, where there is no evidence that she acted with wrongful intent in disobeying court orders; and (2) denied Mother's motion for recusal of the trial court judge, the Honorable N. Christopher Menges (Judge Menges). After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother proceeds with the assistance of court-appointed counsel, Thomas W. Gregory, Jr., Esquire (contempt counsel).

This Court previously summarized the underlying procedural history:[2]

Mother and K.H[.] (Father) have been involved in [child] custody proceedings since 2018. The original custody order, entered on January 23, 2019, granted Mother and Father shared legal and physical custody of A.E.P. (born December 2013) and R.J.H. (born April 2015) (collectively, Children [or the Children]).[FN1] Father was subsequently charged with sexual offenses [unrelated to Children],[FN2] prompting Mother to file a petition to modify custody, seeking sole legal and physical custody of Children. [Children's p]aternal [g]randfather[, B.H. (Grandfather),][FN3] filed a petition to intervene seeking visitation with Children.

---

[FN1] Although Father is the biological father of R.J.H[.], he is not the biological father of A.E.P.

[FN2] Father pleaded no contest to various sexual offenses [involving an unrelated minor,] and was sentenced to a term of 4½ to 10 years' incarceration.

[FN3] Grandfather is the biological grandfather of R.J.H., but not A.E.P.

---

On April 11, 2022, the first day of the custody trial, the trial court issued a temporary custody order granting Mother sole legal and physical custody of Children and permitting Grandfather to have phone calls with Children at least three times a month, as well as partial physical custody once a month for ten hours. On June 3, 2022, the court entered an order granting Mother sole legal and [primary] physical custody, and granting Grandfather phone calls with Children on the first, third, and fifth Monday of every month at 6[:00 p.m.], and partial physical custody on the second and fourth Saturdays of every month from 9[:00 a.m.] to 7[:00 p.m.] The court ordered all parties to sign up for the "Our Family Wizard" app, a platform where families can communicate and share information, including schedules, expenses, and messages. Finally, the court ordered Mother to provide Father and Grandfather access to the Children's school portal for information and records.

---

[2] Judge Menges presided over all proceedings relevant to this appeal.

*S.P. v. K.H.*, 313 A.3d 156, 772 MDA 2023 (Pa. Super. 2024) (unpublished

memorandum at 1-2) (three footnotes in original; remaining footnotes

omitted).

Judge Menges explained what transpired thereafter in his

comprehensive Pa.R.A.P. 1925(a) opinion:

> [D]ue to testimony regarding Mother's lack of compliance [with the June 3, 2022, custody order], the [trial] court scheduled a follow-up hearing, on September 6, 2022, to assess how phone contact with Grandfather was going [and other matters] …. Order, 6/2/22, at 3. The court contemplated potentially expanding Father's and/or Grandfather's [custodial] rights or hearing any contempt petition during the review hearing if Mother was still not abiding by the court's orders. ***Id.***
>
> Alternatively, [the] parties could file a stipulation letting the court know that things were going well instead of appearing for a hearing. ***Id.***, at 4. At the follow-up hearing on September 6, 202[2], Mother remained non-compliant. The court admonished Mother to comply with the court's orders and scheduled an additional follow-up hearing for December 13, 2022, [and] advis[ed] Mother that she had the right to appeal. Order, 9/6/2022, at 1-4. Mother did appeal the April 7, 2022, June 2, 2022, and September 6, 2022 orders. However, upon appellate review, on March 8, 2023, the Pennsylvania Superior Court [quashed the appeals and] determined that there was no final order of custody yet, since the [trial] court [had] indicated that it could still make changes to Father's or Grandfather's rights[; the Superior Court] determined [that it] did not yet have jurisdiction to hear the appeal. ***S.P. v. K.H. & B.H.***, No. 1417 MDA 2022, 2023[] WL 2397382, at * 1, *2 (Pa. Super. Mar. 8, 2023) [(unpublished memorandum); ***see also*** Pa.R.A.P. 341(b)(1) (defining a "final order," *inter alia*, as an order that "disposes of all claims and all parties").]

Trial Court Opinion, 11/20/24, at 2.

This Court summarized the subsequent procedural history:

On April 10, 2023, Grandfather filed a contempt petition alleging Mother had violated the [trial] court's prior custody orders by

refusing to comply with the phone call provisions outlined in the orders, … speaking ill and derogator[ily] about Grandfather in front of Children, … refusing to communicate or furnish records to Grandfather about Children, including but not limited to school reports, conferences, pictures, mental health [records], and counseling, … not informing Grandfather of parent[-]teacher conferences for Children, and refus[ing] to allow Grandfather to order school pictures of Children.[FN8]

[] Contempt Petition, 4/10/23, at 2-3 [(capitalization and punctuation modified)]. The court held a status/contempt hearing on May 9, 2023, where Grandfather testified; Mother, who was *pro se*, failed to testify, and also offered no witnesses or other evidence on her behalf at the contempt hearing.

---

[FN8] That same day, Mother filed a recusal motion, which [Judge Menges] denied.

---

On May 11, 2023, the court entered an order finding Mother in contempt for the following reasons:

(1) Failing to have Children make phone contact with Grandfather regularly as set forth in court order;

(2) Failing to provide medical, educational, and other records for the Children to Grandfather;

(3) Failing to reimburse Grandfather $150.00 for half of the cost of the Our Family Wizard app; and

(4) Failing to participate in Our Family Wizard "in a meaningful way."

Contempt Order, 5/11/23, at 2. The court also ordered that: (1) Grandfather was entitled to additional custodial time on Saturday, June 17, 2023, from 9[:00 a.m.] to 7[:00 p.m.], representing "make-up time" for the failure to have his court-ordered phone calls with Children; (2) Mother buy Children a non-smart cell

phone, at her own expense and within 20 days, so Children may call Grandfather whenever they wish and vice versa; (3) Mother continue to pay the monthly fee for Children's cell phone; (4) Mother, at the very least, provide Grandfather with school portals, passwords, *etc.*, so he may access Children's school information; and (5) Mother reimburse Grandfather $750.00 in attorneys' fees within 120 days. *Id.* at 2-4. Finally, the court reiterated that all provisions in the court's prior custody orders (dated April 7, 2022, June 3, 2022, and September 6, 2022) remained "in full force and effect and Mother is to obey those." *Id.* at 4.

*S.P.*, 313 A.3d 156 (unpublished memorandum at 2-5) (one footnote in original; remaining footnotes omitted).

Mother timely appealed the May 11, 2023, order.[3] On appeal, Mother challenged, *inter alia*, Judge Menges's finding her in civil contempt and imposition of sanctions. *See id.* (unpublished memorandum at 5). On January 3, 2024, this Court affirmed, based on the reasoning set forth in Judge Menges's June 21, 2023, trial court opinion. We concluded that

we can find no abuse of discretion with the trial court's decision to hold Mother in contempt for failing to comply with prior custody orders that were clear, definite, and specific and of which Mother had notice. The court's contempt order properly imposed non-punitive sanctions against Mother, which included reimbursing Grandfather $750.00 for his legal fees and adding back lost [custodial] time to Grandfather's visits due to Mother's intentional, obstructionist actions. *See* 23 Pa.C.S.A. § 5323(g) [(governing contempt for noncompliance with child custody orders)]. Notably, the court did not modify or expand any of the parties' pre-existing custodial rights when imposing sanctions. *See J.M. v. K.W.*, … 164 A.3d 1260, 1267 (Pa. Super. 2017) [("[A] trial court's ability to alter custody as a contempt sanction is restricted to circumstances where the responding party is given express notice that custody will be at issue during the contempt proceeding and

---

[3] On June 21, 2023, Judge Menges issued a thorough Rule 1925(a) opinion rejecting Mother's numerous claims of error.

the modification is based upon the determination of the child's best interest.")].  Furthermore, the court's factual findings are supported in the record, in large part based on Grandfather's uncontradicted testimony, and we find no error of law.

**S.P.**, 313 A.3d 156 (unpublished memorandum at 7) (footnote and some citations omitted).

On March 29, 2024, Mother, acting *pro se*, filed suit in federal court (federal case or federal lawsuit) naming as defendants Judge Menges, Grandfather, Father, and private counsel representing Grandfather and Father, Joshua Harshberger, Esquire (Attorney Harshberger).  **See Pickett v. Menges**, No. 1:24-CV-537, 2024 U.S. Dist. LEXIS 196144, at *5 (M.D. Pa. Oct. 29, 2024).  Mother claimed that the defendants had conspired together and violated her civil rights in connection with the underlying custody case. **Id.** at *6.  Judge Menges filed a motion to dismiss Mother's claims in the federal case, "arguing that judicial immunity applies to bar the claims against him."  **Id.**  On October 29, 2024, the Chief Magistrate Judge for the United States District Court for the Middle District of Pennsylvania issued a Report and Recommendation that Judge Menges's motion to dismiss be granted and the case be dismissed with prejudice.  **See generally id.**; **see also id.** at *12 (concluding that "judicial immunity applies to bar the claims against Judge Menges.").[4]

---

[4] In the federal case, "final review by a District Court judge is pending."  Trial Court Opinion, 11/20/24, at 22 (capitalization modified).

In the instant case, on October 4, 2024, Mother filed a petition for recusal,[5] emphasizing the federal case naming Judge Menges as a defendant. Mother argued that

> having a defendant in a civil rights action preside over a case in which he determines the issue of whether the plaintiff retains custody [of the Children] and is found in contempt clearly presents an appearance of impropriety whether or not [Judge Menges] believes an actual impropriety exists.

Petition for Recusal, 10/4/24, ¶ 17 (emphasis omitted; capitalization modified); *see also id.* ¶ 15 ("If a custody hearing and contempt hearing are held and [Judge Menges] finds Mother in contempt, he has the discretion to jail Mother."). Mother cited our Supreme Court's decision in ***Malinowski v. Nanticoke Micro Techs.***, 2010 Pa. LEXIS 712 (Pa. 2010) (*per curiam*), wherein the Court observed as follows:

> The Supreme Court has made clear that even the "appearance of impropriety is sufficient justification for the grant of new proceedings before another judge…. A jurist's impartiality is called

_____

[5] Mother previously filed motions for Judge Menges's recusal or disqualification on April 10, 2023, and May 18, 2023, which Judge Menges denied. Regarding the latter motion, Judge Menges explained that

> Mother appealed the court's denial of the May 18, 2023 order, and the Pennsylvania Supreme Court quashed the appeal as interlocutory on September 15, 2023. [Order (1111 MDA 2023), 9/15/23 (*per curiam*).] On February 20, 2024, Mother filed a petition for writ of mandamus and/or prohibition in the Pennsylvania Supreme Court, citing [Judge Menges's] failure to recuse despite grounds for disqualification based on bias. The Supreme Court denied the petition on July 24, 2024. [Order (18 MM 2024), 7/24/24 (*per curiam*).]

Trial Court Opinion, 11/20/24, at 21-22.

into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. [***Joseph v. The Scranton Times L.P.***,] 987 A.2d [633,] 634 [(Pa. 2009)] (citing ***In Interest of McFall***, … 617 A.2d 707, 712-713 (Pa. 1992)). "[A] tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings. A trial judge should not only avoid impropriety but must also avoid the appearance of impropriety. [***Joseph***,] 987 A.2d at 634 (citing ***McFall***, 617 A.2d at 714).

***Malinowski***, 2010 Pa. LEXIS 712, at *19-20; ***see also*** Petition for Recusal, 10/4/24, ¶ 13.

Judge Menges scheduled a hearing on Grandfather's petition for contempt and Mother's petition for recusal for October 7, 2024. Order, 10/4/24.[6] At the October 7, 2024, hearing[7] (2024 contempt hearing), Mother, Father, and Grandfather testified. At the beginning of the 2024 contempt hearing, Judge Menges denied Mother's petition for recusal, reasoning as follows:

I want to make it clear on the record that I have no personal bias or prejudice either for or against any party or any counsel in this matter, [and] didn't have any *ex parte* communications. I have no personal knowledge, … no economic interest, and yet I could recuse if circumstances would reveal that there's a reason why I should not participate.

---

[6] Judge Menges noted in his scheduling order that Mother also filed a *pro se* motion for disqualification on September 26, 2024. Order, 10/4/24.

[7] That same day, the trial court also conducted a hearing regarding a petition for modification of custody that Grandfather previously filed on July 28, 2023, wherein he sought shared legal and shared physical custody of Children. Following the hearing in that matter, the trial court entered a final order of custody, the details of which are not pertinent to our disposition. Mother appealed, and that case is before this Court at 1654 MDA 2024.

I'll put on the record that [M]other did file a … federal lawsuit. I was concerned whether [the federal lawsuit] might affect recusal or disqualification, so I sought a formal opinion from the [Pennsylvania] Judicial Ethics Advisory Board. They issued an opinion [(Advisory Board Opinion)] and indicated that just because there was a pending federal lawsuit does not mean that I need to recuse.[8] The recusal is up to me….

So I am not granting [Mother's] petition to disqualify nor am I granting the petition[] for recusal. … [T]hose petitions are denied.

N.T., 10/7/24, at 3-4 (footnote added).

At the conclusion of the 2024 contempt hearing, Judge Menges entered an order (Contempt Order) holding Mother in civil contempt and imposing sanctions against her. **See generally** Contempt Order, 10/8/24; **see also** 23 Pa.C.S.A. § 5323(g), *supra*. Judge Menges found Mother had violated several trial court orders, based on her failure to, *inter alia*, (1) afford Grandfather his scheduled telephone calls and partial physical custody time

_____

[8] Judge Menges attached a copy of the Advisory Board Opinion to his Rule 1925(a) opinion. **See** Trial Court Opinion, 11/20/24, Exhibit 2. The Advisory Board Opinion concluded as follows:

The mere fact that a disgruntled litigant has named [Judge Menges] as a party in federal and state litigation does not in and of itself require [Judge Menges's] disqualification or prevent [Judge Menges] from continuing to preside over the [] custody-related hearings. Nor [is Judge Menges] precluded from responding to [Mother's] motions for disqualification and change of venue. If the opposite were true, disappointed litigants could rid themselves of a jurist by simply filing a motion for disqualification.

**Id.** at 1 (unpaginated).

with Children; (2) provide Grandfather with Children's medical and schooling information; (3) enroll Children in psychological therapy; and (4) make any payments toward court-ordered attorney's fees of $750.00.  **See** Contempt Order, 10/8/24, at 1-2; **see also id.** at 2 (emphasizing that "this is at least a second finding of [Mother's] contempt").  Judge Menges sentenced Mother to serve six months in York County Prison, beginning immediately, and imposed the following purge conditions:

1. Purchase each child a cell phone to contact Grandfather;

2. Unblock Grandfather's contact from Mother's phone;

3. Write a "letter of apology" to Children, which must be approved by Grandfather's counsel;

4. Sign releases with various medical and educational providers for Children, which gave Grandfather access to information;

5. Enroll Children in psychological therapy with a free service available to Children; and

6. Pay $400 toward the outstanding $750.00 in attorney's fees Mother owed Grandfather.

**Id.** at 3-4.

The Contempt Order provided that if Mother completed all of the purge conditions, she would immediately be released from incarceration.  **Id.** at 5. As the trial court explained, the Contempt Order further

> provided that if Mother encountered a roadblock in meeting the purge conditions, [contempt] counsel could file a petition, explaining the situation and seeking Mother's release. … [W]hen [contempt] counsel filed such a petition, the [trial] court granted it, and Mother was released.  Mother [later] fulfilled the purge

- 10 -

conditions, and she was released from incarceration on October 17, 2024, after serving only ten days.

Trial Court Opinion, 11/20/24, at 26; **see also generally** Petition for Release From Incarceration, 10/16/24 (detailing Mother's completion of the purge conditions).[9]

On October 21, 2024, Mother timely filed a notice of appeal, contemporaneously with a Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal. Judge Menges issued his Rule 1925(a) opinion on November 20, 2024.

On appeal, Mother presents two issues for our review:

1. Did [Judge Menges] err in denying the Petition for Recusal as it was clearly improper or, at a minimum, had the appearance of impropriety for [Judge Menges] to hear this case based on the circumstances, which included a lawsuit filed by Mother against [Judge Menges] pending in federal court?

2. Did the lower court err in finding that Mother willfully failed to comply with the court orders?

---

[9] In the Contempt Order, Judge Menges further stated that "[i]n addition to the six months [of] imprisonment, Mother will reimburse Grandfather an additional $750 associated with [Grandfather's] petition for contempt and will have nine months to pay that." Contempt Order, 10/8/24, at 5 (capitalization modified). Further, Judge Menges added that he

is hopeful that these sanctions will in the future cause Mother to comply with court orders as her attitude today, and in prior hearings, has been very contemptuous. She just simply believes she does not need to obey court orders.

*Id.* (capitalization and punctuation modified).

Mother's Brief at 4 (issues enumerated; capitalization and punctuation modified).[10]

In her first issue, Mother claims Judge Menges improperly denied her petition seeking his recusal. *See id.* at 13-18. Mother argues Judge Menges was incapable of presiding impartially over the proceedings, or an appearance of his impropriety existed under the circumstances, particularly in light of the federal case wherein Judge Menges is a named defendant. *See id.* at 17-18. Mother cites our Supreme Court's decision in *McFall*, which stated that "[i]n order for the integrity of the judiciary to be compromised, we have held that a judge's behavior is not required to rise to a level of actual prejudice, but the appearance of impropriety is sufficient." *McFall*, 617 A.2d at 710 (citations omitted); *see also* Mother's Brief at 17. According to Mother, "[t]here is no indication that [Judge Menges] considered how it appeared for him to" preside over the instant case. Mother's Brief at 18; *see also id.* at 17 ("It appears that no consideration was given to the appearance" of impropriety). Mother further points out that "York County is not a county with only one [j]udge who hears custody contempt matters. There were a number of other judges who could have heard this case." *Id.* at 18.

"Where a jurist rules that he can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an

---

[10] Grandfather and Father filed a joint appellee's brief, through Attorney Harshberger.

abuse of discretion." ***In re C.A.J.***, 319 A.3d 564, 570 (Pa. Super. 2024) (citation and ellipses omitted); ***Commonwealth v. Postie***, 110 A.3d 1034, 1037 (Pa. Super. 2015) ("Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential." (citation omitted)). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Watson***, 228 A.3d 928, 939 (Pa. Super. 2020) (citation omitted); ***see also Commonwealth v. King***, 839 A.2d 237, 240 (Pa. 2003) ("The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law[.]").

"A party seeking recusal bears the burden of producing evidence to establish bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." ***Commonwealth v. Watkins***, 108 A.3d 692, 734 (Pa. 2014); ***see also Ware v. U.S. Fid. & Guar. Co.***, 577 A.2d 902, 904 (Pa. Super. 1990) ("[A] mere recitation of unfavorable rulings … does not satisfy the burden of proving judicial bias, prejudice or unfairness."). Pennsylvania law presumes that "judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice." ***2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.***, 239 A.3d 1107, 1118

(Pa. Super. 2020) (citation omitted). "Recusal is not to be granted lightly, lest a jurist abdicate his 'responsibility to decide.'" *League of Women Voters of Pa. v. Commonwealth*, 179 A.3d 1080, 1083 (Pa. 2018) (quoting Pa. Code Jud. Conduct Rule 2.11(A)).

"Generally, a motion for recusal is properly directed to and decided by, in the first instance, the jurist whose participation is being challenged." *C.A.J.*, 319 A.3d at 570 (citation omitted); *see also League of Women Voters*, 179 A.3d at 1083 ("In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. This is a personal and unreviewable decision that only the jurist can make." (citations and quotation marks omitted)). "A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter." *In re Lokuta*, 11 A.3d 427, 435 (Pa. 2011) (citations omitted). "If the judge determines he or she can be impartial, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." *Lomas v. Kravitz*, 130 A.3d 107, 122 (Pa. Super. 2015) (citation and quotation marks omitted); *see also* Pa. Code Jud. Conduct Rule 1.2 ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and

impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.").[11]

Instantly, Judge Menges concluded in his Rule 1925(a) opinion that he

> does not believe that reasonable minds, assessing the facts and circumstances in this case[,] would conclude that [Judge Menges] has violated the Code of Judicial Conduct or engaged in other conduct that reflects adversely on his honesty, impartiality, temperament, or fitness to serve as a judge. Thus, there is no appearance of impropriety in this matter. The prevailing facts and circumstances would not engender in reasonable minds whether recusal should be required, but whether Mother is simply judge[-]shopping, which the court frowns upon. [**See Lomas v. Kravitz**, 170 A.3d 380, 394 (Pa. 2017) (stating that recusal requests for the purpose of "judge-shopping… impair the judicial process.").]
>
> [Judge Menges] has made determinations in prior proceedings involving Mother based on the law and on the facts presented. Likewise, [Judge Menges concludes] that he is able to conduct additional proceedings in an impartial manner, without personal bias or interest in the outcome. As the moving party, Mother had the burden to demonstrate that recusal was required. **Watkins**, 108 A.3d [at] 734…. Because there is no *per se* failure of the test of impropriety based on an unhappy, *pro se* litigant's filing of a lawsuit naming a judge as a party, and given the facts and circumstances in this particular case, Mother did not meet her burden. Therefore, [Judge Menges] did not err in denying Mother's recusal motion.

Trial Court Opinion, 11/20/24, at 22-23 (citation modified).

Judge Menges further reasoned that

---

[11] The comment to Rule 1.2 provides that, "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated [the] Code [of Judicial Conduct] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Pa. Code Jud. Conduct Rule 1.2, cmt. 5.

> [Mother] seems to [believe] that Mother's filing of [the federal case] against [Judge Menges] automatically meets the appearance-of-impropriety standard requiring recusal. The court acknowledges [Mother's] concern, but respectfully disagrees with this perspective, which would allow a litigant to automatically disqualify a judge simply by filing a lawsuit against the judge.

*Id.* at 19-20; *see also id.*, Exhibit 2 (Advisory Board Opinion).

Judge Menges's reasoning is supported by the record, and we discern no abuse of discretion or error of law. We conclude Mother has failed to meet her burden of presenting any evidence of bias, prejudice, or unfairness that raises a substantial doubt as to Judge Menges's ability to preside over the proceedings impartially. *See Watkins*, 108 A.3d at 734. Our review of the record reflects no legitimate basis to conclude that Judge Menges's continued involvement in the case creates any appearance of impropriety that would necessitate recusal. *See Lomas*, 130 A.3d at 122. Moreover, we emphasize that allowing litigants to manufacture a judge's recusal by merely filing a lawsuit against that judge permits litigants to engage in judge-shopping and is not condoned. *See Lomas*, 170 A.3d at 394; *see also Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1299 (Pa. 1985) (stating that cases "may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge" presiding over the matter (citation omitted)); *M.O. v. F.W.*, 42 A.3d 1068, 1071 (Pa. Super. 2012) (*per curiam*) (holding the trial court in a child custody action "correctly denied [f]ather's motion[] to recuse," and "commend[ing the trial court judge] for her refusal to allow [] a blatant attempt of forum

shopping to occur during a hotly contested custody battle."). Accordingly, Mother's first issue merits no relief.

In her second issue, Mother contends the trial court improperly entered the Contempt Order holding her in civil contempt, as the record belies its finding that she willfully disobeyed court orders. *See* Mother's Brief at 19-22. Mother maintains she "sincerely believes that the court's custody orders are in violation of the law and therefore[,] there was no wrongful intent when considered in [the] context of the entire case." *Id.* at 21-22 (capitalization modified). According to Mother, she

> did comply with the [trial court's] provision regarding [Grandfather's] visitation [with the Children]. When the parties appeared in court in 2023, it was determined that Grandfather [was entitled to] a make-up visit. He got that visit. Since that time[,] there were two occasions where Grandfather did not get [visits with] the Children and [these occasions] were significantly after [Grandfather's] filing of the petition for contempt. On [] one occasion, Grandfather intentionally chose not to get the Children from a location closer to him. His refusal cannot be deemed a willful failure to comply on the part of Mother.

*Id.* at 21 (capitalization modified); *see also id.* at 22 (Mother pointing out that she "provided testimony that Grandfather was in fact not consistent with his telephone calls [with the Children,] and that the [C]hildren did not want to speak to him."). Mother asserts she had no wrongful intent in disobeying

the trial court's orders, as she "is acting in what she believes is the best interests of [the C]hildren." *Id.* at 22.[12]

Grandfather and Father counter the trial court properly exercised its discretion in finding Mother in civil contempt and imposing sanctions against her. *See* Appellee's Brief at 6-7.

> At the [2024] contempt hearing, Mother refused to offer any affirmative defense to Grandfather's allegations and testimony. The record was clear and uncontroverted that Mother refused to allow phone calls, spoke about Grandfather in a derogatory manner to the [C]hildren, refused to share legal information

---

[12] Mother also briefly mentions, without citation to authority, that she "has questioned Grandfather's [custodial] rights for a significant period of time," as well as the "issue of standing[.]" Mother's Brief at 20. However, Mother did not raise this issue in her Pa.R.A.P. 1925 concise statement or her brief's statement of questions involved. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived."); *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (holding that appellant waived an issue on appeal for failing to include it in a Rule 1925 concise statement, stating, "[T]his Court has no discretion in choosing whether to find waiver. Waiver is mandatory, and this Court may not craft *ad hoc* exceptions or engage in selective enforcement." (citation omitted)); *Krebs v. United Ref. Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citing Pa.R.A.P. 2116(a) and observing that issues not presented in a brief's statement of questions are generally deemed waived). Further, Mother waived this claim for her failure to adequately develop it in the instant appeal. *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop h[er] issue in an argument and fails to cite any legal authority, the issue is waived. Moreover, mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter." (internal citations and quotation marks omitted; formatting modified)).

Moreover, we observe that "[w]hether a party has standing to maintain an action is **not a jurisdictional question**." *In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 (Pa. 2006) (emphasis added) (quoting *Beers v. Unemployment Comp. Bd. of Review*, 633 A.2d 1158, 1160 n.6 (Pa. 1993); *see also id.* ("[A] court is prohibited from raising the issue of standing *sua sponte*.").

required in the court orders, and refused [Grandfather] periods of physical custody as ordered. The court properly found Mother's violations were both volitional and with wrongful intent.

*Id.* at 6. Grandfather and Father further claim that "the trial court's sanctions were specific to redress Grandfather['s] loss and not punitive." *Id.* at 7.

In reviewing a challenge to a contempt order, we are mindful that

[e]ach court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Barna v. Langendoerfer*, 246 A.3d 343, 346 (Pa. Super. 2021) (citation omitted).

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. The court may order civil or criminal contempt. The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge [herself] of [civil] contempt by complying with the court's directive.

*In re Estate of Disabato*, 165 A.3d 987, 992 (Pa. Super. 2017) (internal citations and paragraph break omitted). "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained." *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa. Super. 2004) (citation omitted). "It is [] common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an

opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period." **Rhoades v. Pryce**, 874 A.2d 148, 151 (Pa. Super. 2005) (*en banc*) (citation omitted); **see also id.** (stating purge conditions are not sanctions and are instead, "a means of avoiding the sanction.").

> In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that **the contemnor acted with wrongful intent**.

**B.A.W. v. T.L.W.**, 230 A.3d 402, 406 (Pa. Super. 2020) (citation omitted; emphasis added); **see also Commonwealth v. Reese**, 156 A.3d 1250, 1258 (Pa. Super. 2017) (stating that the elements of civil contempt may be proven by circumstantial evidence and logical inferences from the facts).

Regarding the wrongful intent element of civil contempt, this Court has stated that

> [a] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Unless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the court, no contempt has been proven.

**Hanbicki v. Leader**, 294 A.3d 1234, 1241 (Pa. Super. 2023) (citation omitted).

> When making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and **consider context**, and **wrongful intent can be imputed**

> **to a defendant** by virtue of the substantial certainty that h[er] actions will violate the court order.

***Gross v. Mintz***, 284 A.3d 479, 492-93 (Pa. Super. 2022) (citation and brackets omitted; emphasis added).

Further, it is well-established that "[a]ssessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder." ***Gutteridge v. J3 Energy Grp., Inc.***, 165 A.3d 908, 916 (Pa. Super. 2017) (*en banc*) (citation omitted). "This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." ***Harcar v. Harcar***, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations and brackets omitted).

Instantly, we are guided by our decision in ***Luminella v. Marcocci***, 814 A.2d 711 (Pa. Super. 2002). In ***Luminella***, the parties were "embroiled in a bitter custody battle" regarding their three minor daughters. ***Id.*** at 714. The trial court entered a custody order awarding the parties shared legal and physical custody. ***Id.*** The trial court subsequently found the appellant/mother in contempt of the custody order, after she withheld custody from the children's father. ***Id.*** at 715. The trial court "placed mother on probation for a period of six months, compelled mother to undergo psychological testing, and compelled mother to pay to father a fine of $500.00 plus attorney's fees of $1,000.00." ***Id.*** at 719.

- 21 -

On appeal in ***Luminella***, the mother argued that "she was not in willful contempt" of the custody order because she (1) feared for the children's safety while they were in father's custody; and (2) was "unable to force her children to comply with the order[.]" ***Id.*** We affirmed and rejected the mother's claim, reasoning as follows:

> To accept mother's argument is to accept anarchy. By relying on fears for the children's safety as a reason that she could not comply with the court order, mother relies on factors she should have argued during the development of the custody order[.] …. Mother is not permitted to ignore the order and unilaterally institute measures she feels appropriate instead of the order.

***Id.*** (capitalization modified).

Instantly, Judge Menges opined he properly found Mother in civil contempt, and that her disobedience of the court's orders was volitional and with wrongful intent:

> The court's orders of April 7, 2022, June 2, 2022, September 6, 2022, and May 9, 2023 are clear, definite, and specific. Mother had notice of the orders that she is alleged to have disobeyed. The court found that Mother's violations of orders the court entered in Children's best interests were both volitional and with wrongful intent. At the contempt hearings on July 17, 2023 and October 7, 2024, **Mother acknowledged disobeying the court's various orders for reasons related more to her disagreement with the orders rather than to an inability to perform** or of making a good-faith effort to comply with the court's orders.[13] It is not entirely clear why Mother is so resistant

---

[13] ***See***, ***e.g.***, N.T. (2024 contempt hearing), 10/7/24, at 59 (Mother stating that "[t]he biggest problem here is that the [c]ourt orders that we're operating under are a direct contradiction of what's in [the Children's] best interest, but I have done my best to follow the orders to the best of my ability in the present situation."); ***id.*** at 63 (Mother confirming that she "ha[s] not fully complied
*(Footnote Continued Next Page)*

to following the court's orders regarding allowing Grandfather to have information and contact with Children.

Mother seems to believe that she is not obligated to follow court orders and is justified in not following interlocutory orders that have yet to be appealed or any order that she deems not to be in Children's best interest. Mother persists in this belief, even after Mother received the Superior Court's ruling on her appeal of the court's prior finding of contempt on May 9, 2023. [**See generally S.P.**, 313 A.3d 156.]

Trial Court Opinion, 11/20/24, at 23-24 (emphasis and footnote added).

The evidence of record supports Judge Menges's findings. **See id.** Contrary to Mother's claim, the record leaves no doubt that wrongful intent could be imputed to Mother by her repeated disobedience of multiple, specific court orders, of which Mother had adequate notice. **See S.P.**, 313 A.3d 156 (unpublished memorandum at 7) (holding Judge Menges "properly imposed non-punitive sanctions against Mother… due to Mother's **intentional**, obstructionist actions." (emphasis added)); **Gross**, **supra**; **Luminella**, **supra**; **see also Godfrey v. Godfrey**, 894 A.2d 776, 783 (Pa. Super. 2006) (concluding the evidence of record supported the trial court's holding father/appellant in civil contempt, where father willfully violated a child support order by never complying with the order and accumulating substantial arrearages). Accordingly, we discern no clear abuse of Judge Menges's

_____

with the physical custody [order] over the past year," explaining that the "[C]hildren were absolutely distraught about the Court decision.").

discretion in holding Mother in civil contempt. Mother's final issue merits no relief.

Based upon the foregoing, we affirm the Contempt Order finding Mother in civil contempt and imposing sanctions against her.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/16/2025